UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                           Case No. 8:11-bk-22258-MGW
                                                                           Chapter 7

Fundamental Long Term Care, Inc.,

      Debtor.

_____/

**ORDER AND MEMORANDUM OPINION ON MOTION
FOR RECONSIDERATION OF PRIVILEGE ISSUES**

        This Court previously ruled in a March 2013 Memorandum Opinion that the Trustee, standing in the shoes of Trans Health Management, Inc. ("THMI"), was entitled to invoke the co-client exception to the attorney-client privilege to obtain certain communications between Trans Health, Inc. ("THI")—THMI's former corporate parent—and lawyers that THI (and, later, its state court receiver) hired to defend THI and THMI in six wrongful death cases.[1] That ruling was based, in part, on the existence of an indemnification agreement between THI and THMI.[2] Two days after issuing its ruling, this Court heard oral argument from THI Holdings (THI's corporate parent) on a motion to dismiss an adversary complaint filed by the Trustee seeking to enforce that same indemnification agreement. After the Court dismissed the Trustee's adversary complaint,

---

[1] Doc. No. 716. The Court's memorandum opinion is published at *In re Fundamental Long Term Care, Inc.*, 489 B.R. 451 (Bankr. M.D. Fla. 2013).

[2] The Court also specified at the outset of its Memorandum Opinion that it was not making any findings regarding the existence or enforceability of that agreement for any purpose other than determining the existence of a co-client relationship. To be clear, any reference to the existence of the agreement (or any fiduciary duty arising out of it) is for the purposes of determining whether a co-client relationship exists. Any reference to the existence of enforceability of the agreement is not binding on any proceeding pending in this Court to enforce the agreement. Nor should it be binding on this (or any other) Court in an action for malpractice, breach of fiduciary duty, or other related claims.

THI's state court receiver—along with Fundamental Administrative Services and Fundamental Long Term Care Holdings—asked this Court to reconsider its Memorandum Opinion.[3]

Reconsideration is warranted—as the parties suggest—where newly discovered evidence would merit a different result. But here, the Court was aware of the potential unenforceability of the indemnification agreement (i.e., the "newly discovered evidence") at the time it issued its Memorandum Opinion. In fact, it briefly addressed that issue at the outset of the Memorandum Opinion. So that evidence cannot be "newly discovered." And even if it was, it would not merit a different result. For starters, the Court's ruling did not hinge on the existence of the indemnification agreement but rather the parties' *belief* at the time that it existed and was enforceable. Moreover, the indemnification agreement is not indispensable to the existence of a co-client relationship. It is one factor evidencing a client's objectively reasonable belief that it had an attorney-client relationship. Here, the overwhelming evidence is that it was objectively reasonable under all the circumstances (regardless of the existence of the indemnification agreement) for THMI to believe it had an attorney-client relationship with the law firms defending it in the wrongful death cases. Accordingly, the motions for reconsideration should be denied.

## Background[4]

This involuntary chapter 7 case was filed on December 5, 2011.[5] Shortly after the order for relief was entered, the Trustee began requesting copies of all the books and

---

[3] Doc. Nos. 732 & 742.

[4] For a more detailed discussion of the background of this dispute, see the Court's March 2013 Memorandum Opinion. *In re Fundamental Long Term Care, Inc.*, 489 B.R. at 456-60.

records relating to the Debtor and THMI that were in the possession, custody, or control of the THI Receiver, various law firms, and others.[6] After a dispute arose between the Trustee, the THI Receiver, and the law firms, this Court concluded that the Trustee was entitled to production of those documents and the right to control THMI's defense in six wrongful death cases that were pending against it and THI.[7]

The Court later granted the Trustee's motion requesting production of those documents from the various law firms under Rule 2004.[8] The law firms—along with the THI Receiver, Fundamental Administrative Services, Christine Zack, and Kristi Anderson—objected to the production of voluminous documents (in particular, the litigation files from the wrongful death cases) based on the attorney-client, common interest, joint defense, and work product privileges. The Court then invited all of the parties to brief those privilege issues with respect to the litigation files.

In all, the Court received and considered a total of 34 memoranda—which cited to over 80 cases—filed by the parties. The briefing was, to say the least, comprehensive. And all of the relevant parties had an opportunity to be heard on the privilege issues. After reviewing the memoranda and hearing substantial argument from counsel, the Court issued its comprehensive March 2013 Memorandum Opinion.[9]

---

[5] Doc. No. 1.

[6] Feb. 23, 2012 Hr'g Tr., Doc. No. 31 at 4–5; Doc. No. 23; Mar. 28, 2012 Hr'g Tr., Doc. No. 105 at 6.

[7] Doc. No. 409. That ruling, which was issued on October 9, 2012, is reported at *In re Fundamental Long Term Care, Inc.*, 2012 WL 4815321 (Bankr. M.D. Fla. Oct. 9, 2012).

[8] Doc. No. 427.

[9] Doc. No. 716; *In re Fundamental Long Term Care, Inc.*, 489 B.R. 451 (Bankr. M.D. Fla. 2013).

As set forth in the Memorandum Opinion, the Court concluded that the Trustee is entitled to invoke the co-client exception to the attorney-client privilege to obtain (i) any communications between THI (and the THI Receiver) and the law firms representing THI and THMI in the wrongful death cases; (ii) any communications between Fundamental Administrative Services (including Ms. Zack and Ms. Anderson) and the law firms representing THI and THMI (but not communications solely between Fundamental Administrative Services and the THI Receiver); (iii) communications between the parties to the January 5, 2012 settlement agreement (and their lawyers) *with respect to the defense of the wrongful death cases*; and (iv) copies of the litigation files (including any attorney work product) for the wrongful death cases.[10] The Court, however, imposed two important limitations on its rulings.

First, the Court concluded that the Trustee is not entitled to any communications or litigation files relating to the defense of any proceedings supplementary in state court, opposition to the Trustee's efforts to obtain the litigation files, the Trustee's efforts to control the defense of THMI, or other issues unrelated to the defense of the wrongful death cases.[11] Second, the Trustee and her attorneys are not permitted to share any of the information they obtain under the co-client exception with any third party that would destroy the attorney-client, common interest, joint defense, and work product privileges (such as the plaintiffs in the wrongful death cases or their attorneys).[12]

---

[10] *In re Fundamental Long Term Care, Inc.*, 489 B.R. at 477.

[11] *Id.* at 477-78.

[12] *Id.*

The THI Receiver and the Fundamental entities now seek reconsideration of the Court's Memorandum Opinion.[13] According to the THI Receiver and the Fundamental entities, the Court's Memorandum Opinion hinges on the existence of an indemnification agreement between THI and THMI, but the THI Receiver and Fundamental entities say the indemnification agreement is unenforceable because it only covers losses relating to nursing homes operated by THI or one of its subsidiaries other than THMI, and the losses here occurred at nursing homes operated by Lyric or Claremont (which are not THI subsidiaries). They say the Court was not aware of that argument until two days after it issued its Memorandum Opinion when THI Holdings argued its motion to dismiss the Trustee's adversary complaint seeking to enforce the indemnification agreement. And, in fact, the Court dismissed the Trustee's adversary complaint against THI Holdings. Based on all of that, the THI Receiver and the Fundamental entities say the Court should reconsider its Memorandum Opinion.

## Conclusions of Law

"Parties seeking reconsideration of a prior order are held to a high standard."[14] Specifically, a party seeking reconsideration must demonstrate (i) that controlling law has changed; (ii) newly discovered evidence would merit a different result; or (iii) reconsideration is necessary to correct a clear error of law or fact or to prevent a manifest

---

[13] Doc. Nos. 732 & 742.

[14] *Belmont Wine Exchange v. Nascarella (In re Nascarella)*, 2013 WL 1968500 (Bankr. M.D. Fla. May 10, 2013) (quoting *In re Waczewski*, 2005 WL 1330691, at *1 (Bankr. M.D. Fla. 2005)).

injustice.[15] The THI Receiver and Fundamental entities claim that newly discovered evidence in this case would merit a different result.[16]

But there is no newly discovered evidence here. The primary argument in support of reconsideration is that the Court discovered that the indemnification agreement was unenforceable for the first time at the hearing on THI Holdings' motion to dismiss the Trustee's adversary complaint seeking to enforce that agreement. That hearing took place on March 21, 2013—two days after the Court issued its Memorandum Opinion. According to the Fundamental entities, the "Court had an opportunity to review and consider for the first time terms of the stock purchase agreement" and that the "Court's new consideration of the contractual language underpinning the alleged indemnity claim undoubtedly affects many explicit conclusions within" the Court's Memorandum Opinion.[17]

In actuality, the Court has reviewed the stock purchase agreement—including the indemnification provisions—numerous times throughout this case. And it specifically reviewed it in connection with ruling on the privilege issues addressed in its Memorandum Opinion. To be fair, the Court did not hear THI Holdings' oral argument until after the Court entered its Memorandum Opinion. But the same argument it advanced at the March 21 hearing had been raised in its preliminary statement regarding

---

[15] *Id.*

[16] Doc. No. 732.

[17] *Id.* at ¶ 3.

the Trustee's indemnification demand,[18] and the Court did review that document in preparation for a February 12, 2012 hearing on the Trustee's indemnification demand. So the Court was aware of the argument that the indemnification agreement is potentially unenforceable at the time it issued its Memorandum Opinion.

In fact, the Court specifically addressed that issue in its Memorandum Opinion. The first time it mentioned the indemnification agreement, the Court explained that its ruling depended, at least in part, on the existence of the indemnification agreement and observed that THI Holdings denied it was obligated to indemnify THMI.[19] Nevertheless, the Court noted that the actual enforceability of the indemnification agreement was not necessary to the Court's ultimate conclusion.[20]

It is also worth noting that the Court did not determine that the indemnification agreement was unenforceable when it dismissed the Trustee's original complaint seeking a declaratory judgment regarding her rights under—and damages for THI Holdings' alleged breach of—that agreement. The Court dismissed the complaint because the Trustee failed to allege sufficient facts giving rise to a plausible claim for relief under that agreement. The Trustee has since amended her complaint, and the Court recently denied THI Holdings' motion to dismiss the amended complaint. At this point, the Court has not determined whether the indemnification agreement is, in fact, enforceable.

---

[18] Doc. No. 671 at 1.

[19] *In re Fundamental Long Term Care, Inc.*, 489 B.R. at 455 n.1.

[20] *Id.*

7

And that leads to the second reason reconsideration is not warranted: even if the Court ultimately determines that the indemnification agreement is unenforceable, that fact would not merit a different result in this case. In its Memorandum Opinion, the Court looked to *Sky Valley Limited Partnership v. ATX Sky Valley*, which enumerated a number of factors to consider in determining whether the co-client exception to the attorney-client privilege applies.[21] In finding that THI and THMI were co-clients, this Court concluded that the three most significant *Sky Valley* factors—a contractually based right of access to information, the existence of a fiduciary relationship, and a de minimis possibility that a conflict would arise between the clients—were present in this case.[22]

The THI Receiver and Fundamental entities say that the Court's finding with respect to two of those factors—the contractual right to access information and the existence of a fiduciary relationship—is based on the erroneous assumption that a contractual right to indemnification exists. They say there is no right to indemnification because the agreement only obligates THI to indemnify THMI for losses relating to nursing homes operated by THI or one of its subsidiaries other than THMI, and the nursing homes in this case allegedly were operated by Lyric and Claremont (which are not THI subsidiaries). But that argument overlooks two important points.

First, the three *Sky Valley* factors relied on by the Court are proxies for whether (i) THMI reasonably believed under all the circumstances that it was a client of the law firms defending it in the wrongful death cases; and (ii) the THI Receiver had a reasonable

---

[21] *Id.* at 465 (citing *Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd.*, 150 F.R.D. 648 (N.D.Cal.1993)).

[22] *Id.* at 466-67.

expectation that its communications with counsel defending THI and THMI in the wrongful death cases would be confidential. As the Court explained in its Memorandum Opinion, the test for determining the existence of a co-client relationship for purposes of triggering the co-client exception to the attorney-client privilege is an objective one:

> [C]ourts have not been satisfied simply to ask whether each of two persons sought legal service or advice from a particular lawyer in her professional capacity. *Instead, the courts have focused on whether it would have been reasonable, taking into account all the relevant circumstances, for the person who attempted to invoke the joint client exception to have inferred that she was in fact a "client" of the lawyer.*[23]

If THI and the THI Receiver believed they were bound by the indemnification agreement, then it would have been reasonable for THMI to have inferred it was, in fact, a client of the law firms defending it in the wrongful death cases.

And there can be no serious argument that THI and the THI Receiver believed they were bound by the indemnification agreement until very recently. Otherwise, what is the explanation for the repeated references by THI and the THI Receiver—as well as the Debtor and Fundamental Administrative Services—to THI's obligations under the indemnification agreement when seeking affirmative relief from the various state courts in the wrongful death cases and this Court during the pendency of this bankruptcy case?[24]

---

[23] *Id.* at 464-65 (quoting *Sky Valley*, 150 F.R.D. at 651) (emphasis added).

[24] As the Court pointed out in its Memorandum Opinion, the record is replete with references to THI's obligations under the indemnification agreement. *See In re Fundamental Long Term Care*, 489 B.R. at 455 n.1 (citing Doc. Nos. 105, at p. 5; 109 at p. 17; 204 at pp. 9-10; 318 at pp. 27-29; 373 at p. 59; 402 at pp. 127-29; 599 at p. 124). The Trustee has identified additional references. Doc. Nos. 682, 765 & 767.

The fact that the indemnification may turn out to be unenforceable does not somehow change the parties' belief that the agreement was enforceable at the time.

Second, those three factors are not indispensable to the finding of a co-client relationship. They are, as the Court pointed out, the most important of the numerous factors enumerated by the *Sky Valley* court. But other courts have looked to different factors.[25] In the end, courts are—regardless of the factors or test they employ—primarily concerned with evaluating whether the party seeking to invoke the co-client exception had an objectively reasonable belief (under all of the circumstances) that it was a client.[26]

In fact, the First Circuit Court of Appeals did just that in its 2000 decision in *FDIC v. Ogden Corp.*[27] In that case, Citicorp and the FDIC sued Ogden Corporation. Ogden had acquired the banks' interest in a partnership. Under its agreement with the banks, Ogden was directed to pursue the recovery of certain insurance proceeds and pay a portion of the proceeds to the banks. Ogden hired Dickstein, Shapiro, Morin & Oshinsky to handle the insurance claims. The banks and Ogden became embroiled in a dispute over the proceeds recovered by Dickstein, so the banks sued Ogden, and during the course of

---

[25] *See, e.g., FDIC v. Ogden Corp.,* 202 F.3d 454 (1st Cir. 2000) (explaining that courts "may consider multiple factors, including but not limited to matters such as payment arrangements, allocation of decisionmaking roles requests for advice, attendance at meetings, frequency and content of correspondence, and the like"); *Luna Gaming—San Diego, LLC v. Dorsey & Whitney, LLP*, 2008 WL 4492617, at *5-6 (S.D. Cal. Sep. 30, 2008) (explaining that relevant factors, other than those identified in *Sky Valley*, include whether the lawyer was paid for its services; the magnitude of the interests involved; whether the party had access to other lawyers; and the relative sophistication of the party involved); *Odmark v. Westside Bancorporation, Inc. (In re Odmark),* 636 F. Supp. 552, 555-56 (D. Wash. 1986) (explaining that the mere subjective belief of the party invoking the co-client exception is not sufficient unless the "belief is minimally reasonable").

[26] *Ogden*, 202 F.3d at 461-63.

[27] *Id.*

that lawsuit, they subpoenaed Dickstein. The issue was in *Ogden* was whether the banks were clients of the law firm (Dickstein) even though the law firm had been hired by Ogden.

The court in *Ogden* noted that courts "customarily determine the existence *vel non* of an attorney-client relationship by evaluating whether the putative client's belief that such a relationship existed was objectively reasonable under all the circumstances."[28] The Court ultimately concluded that the reasonableness of the banks' belief that Dickstein had become their lawyer was manifest. In part, that ruling was based on evidence that a bank representative had taken copious notes during a meeting with a Dickstein partner, Dickstein had sought the banks' assistance in responding to discovery, and a Dickstein partner sent a letter to one of the banks setting for a detailed legal interpretation of an agreement.[29] But the Court held that Dickstein's engagement letters stating they represented the banks and the firm's appearance in court on behalf of the banks—by itself—was sufficient to establish a co-client relationship:

> The entries of appearance and the engagement letters alone constitute powerful proof, and the correspondence evinces a coordinated legal strategy sufficient to lead a reasonable person standing in [the bank's] shoes to infer that Dickstein had become its attorney.[30]

Notably, in concluding that a co-client relationship existed between the banks and Dickstein, the court did not rely on the existence of a fiduciary relationship.

---

[28] *Id.* at 463.

[29] *Id.* at 462-63.

[30] *Id.* at 463.

The facts in *Ogden* are analogous to those here. Like in *Ogden*, the engagement letters in this case specifically provide that the law firms were retained to represent THMI in the wrongful death cases. The law firms actually made appearances (and advanced legal positions) in the wrongful death cases on THMI's behalf. And those law firms coordinated the legal strategy for THI and THMI. Those facts are sufficient, by themselves, for THMI—like the banks in *Ogden*—to reasonably conclude that it was a client of the law firms. Accordingly, a co-client relationship exists between THI and TMI regardless of the existence or ultimate enforceability of the indemnification agreement.

That leaves for consideration the last argument raised by the THI Receiver: the indemnification provides that Delaware law applies, and a duty to defend does not give rise to a fiduciary duty under Delaware law.[31] While the Court's Memorandum Opinion was based, in part, on the existence of a fiduciary relationship arising out of THI's assumption of THMI's defense, a fiduciary relationship is not, for the reasons discussed above, indispensable to the finding of a co-client relationship. That relationship can exist, as just discussed, based on the law firms' engagement letters and appearances in court on behalf of THMI. So, in one sense, the THI Receiver's argument is moot.

---

[31] The Fundamental entities also say the Court's Memorandum Opinion rests on many contested issues of fact. Doc. No. 732 at 3 n.1. It is not clear that either of the Fundamental entities (or any other party) previously raised the need for an evidentiary hearing. And the Fundamental entities only cite to one contested issue of fact—whether the Trustee has "thrown in the towel" on THMI's defense—without much discussion of the issue. In fact, the Court's Memorandum Opinion does not rest on many contested issues of fact. The Court's observation that there was no evidence the Trustee had "thrown in the towel" was part of the Court's discussion regarding the identity between THI's and THMI's interests in the wrongful death cases—a fact that the THI Receiver has conceded numerous times. *In re Fundamental Long Term Care*, 489 B.R. at 466-67.

Nevertheless, the Court is not convinced that a person assuming the defense of another does not owe the other a fiduciary duty. The THI Receiver cites two cases for the proposition a duty to defend does not give rise to a fiduciary duty under Delaware law.[32] But neither of those cases actually says that. One case stands for the relatively unremarkable proposition that an insurer's duty in handling a claim by a third party is not measurable by the standards of a fiduciary.[33] The other generally holds that an insurer generally does not owe a fiduciary duty to its plan participants.[34] Neither case actually involved—much less discussed—the duty an insurer owes an insured when it assumes the insured's defense.

And the idea that a party assuming the defense of another does not owe a fiduciary—or analogous—duty to the other party seems illogical. Under the THI Receiver's analysis, once it assumed THMI's defense it was free to do whatever it pleased with no recourse. The Court is not convinced Delaware law, if it applies, would allow that.

---

[32] Doc. No. 742 at 3 (citing *Cross v. BCBSD, Inc.*, 836 A.2d 492, 495 (Del. 2003); *Corrado Bros. Inc. v. Twin City Fire Ins. Co.*, 562 A.2d 1188, 1192 (Del. 1989)).

[33] *Corrado Bros.*, 562 A.2d at 1192.

[34] *Crosse*, 836 A.2d at 495-96.

**Conclusion**

The potential unenforceability of the indemnification agreement is not newly discovered evidence. And even if it was, it would not merit a different result here. Accordingly, it is

**ORDERED** that the motions for reconsideration filed by the THI Receiver and the Fundamental entities are DENIED.

**DONE** and **ORDERED** in Chambers at Tampa, Florida, on June 17, 2013.

Michael G. Williamson
United States Bankruptcy Judge

Attorney Steven M. Berman is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.