UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:	Case No. 8:11-bk-22258-MGW
	Chapter 7

Fundamental Long Term Care, Inc.,

    Debtor.
_____/

**MEMORANDUM OPINION AND ORDER
GRANTING ESTATE OF JACKSON'S MOTION FOR
SUMMARY JUDGMENT ON DEBTOR'S CLAIM OBJECTION**

    The THI Receiver was defending Trans Health, Inc. ("THI") and the Debtor's wholly owned subsidiary, Trans Health Management, Inc. ("THMI") in six wrongful death cases. According to the THI Receiver, the lawyer for the wrongful death plaintiffs (Jim Wilkes) notified the THI Receiver (and his counsel) that his clients had no intention of filing claims in THI's receivership proceeding because he was going after "bigger fish." Based on that representation, the THI Receiver says he withdrew his defense of THI and THMI in the wrongful death cases. That ultimately led to a $110 million judgment against THI and THMI in a wrongful death case filed by the Estate of Jackson and eventually a judgment against the Debtor in proceedings supplementary. Although the Estate of Jackson and the wrongful death plaintiffs never filed a claim in the receivership proceeding, they did file a motion in a Florida state court asking the court to determine that they had timely filed claims in the receivership. And the Estate of Jackson filed a claim in this case for the amount of the judgment.

    The Debtor has objected to the claim on the basis that the judgment was obtained through extrinsic fraud. In response, the Estate of Jackson has filed a motion for summary judgment arguing that even accepting as true the factual allegations contained in the objections, that as a matter of law the objection should be overruled. The Court must now decide—in ruling on the

Debtor's objection to the Estate of Jackson's claim—whether the *Jackson* state court judgment is void because it was procured by extrinsic fraud.

To prove extrinsic fraud, the Debtor must show, at a minimum, that Wilkes made a false statement to the THI Receiver. For purposes of consideration of the motion for summary judgment, it is undisputed that Wilkes' statement to the THI Receiver (i.e., that his clients would not be filing claims in the receivership proceedings because they were going after "bigger fish") was true. The THI Receiver concedes that Wilkes' clients never filed claims in the receivership proceedings. And Wilkes' clients, in fact, went after (presumably) "bigger fish." Absent a false statement, the Debtor cannot prove extrinsic fraud. Accordingly, the *Jackson* state court judgment is not void.

## **Undisputed Facts**[1]

### The Receivership Proceeding

THI previously owned a number of subsidiaries that operated nursing homes throughout the United States. THMI was a wholly owned subsidiary of THI that provided management services to the nursing homes operated by THI. In March 2006, THI sold all of its stock in THMI to the Debtor in this case.[2] Three years later, THI (along with 43 of its subsidiaries) filed for receivership in Maryland.[3] Michael Sandnes was initially appointed as THI's Receiver. He was

---

[1] The undisputed facts come primarily (if not exclusively) from the affidavits of Maria Ellena Chavez-Ruark and Alan Grochal. The Court will accept the testimony of Ms. Chavez-Ruark and Mr. Grochal as true for purposes of ruling on the Estate of Jackson's summary judgment motion.

[2] Doc. No. 894-1 at ¶ 6; Doc. No. 895-1 at ¶ 6.

[3] Doc. No. 894-1 at ¶ 4; Doc. No. 895-1 at ¶ 3.

later succeeded by Alan Grochal in July 2010.[4] Both Sandnes and Grochal were represented by Maria Ellena Chavez-Ruark in their capacity as the THI Receiver.[5]

## The Wrongful Death Cases

After the THI Receiver was appointed, he assumed the defense of THI and THMI in various wrongful death actions that had been filed against the companies.[6] Five of the wrongful death cases had been filed before THI filed for receivership.[7] The sixth case was filed less than a month after the receivership proceeding was initiated.[8] THI had previously been defending THMI in those cases under an indemnification agreement that existed before the receivership, and the THI Receiver assumed that obligation after the receivership proceedings were initiated to make sure that a judgment against THMI by default would not deplete the receivership assets.[9]

## The Claims Bar Dates

Under the receivership rules, parties were required to file a proof of claim within 120 days of receiving notice that the receivership had been commenced.[10] The original claims bar date in THI's receivership was in May 2009.[11] Since only one of the six wrongful death claimants (the Estate of Jones) had filed a claim in the receivership by that date, the THI

---

[4] Doc. No. 894-1 at ¶ 5.

[5] Doc. No. 894-1 at ¶ 5; Doc. No. 895-1 at ¶¶ 3 & 5.

[6] Doc. No. 894-1 at ¶¶ 7 & 8; Doc. No. 895-1 at ¶¶ 8 & 9.

[7] Doc. No. 894-1 at ¶¶ 7 & 8; Doc. No. 895-1 at ¶ 8.

[8] Doc. No. 894-1 at ¶ 8; Doc. No. 895-1 at ¶ 8.

[9] Doc. No. 894-1 at ¶ 9; Doc. No. 895-1 at ¶ 9.

[10] Doc. No. 894-1 at ¶ 10; Doc. No. 895-1 at ¶ 10.

[11] Doc. No. 894-1 at ¶ 10; Doc. No. 895-1 at ¶ 10.

Receiver says he requested that the receivership court extend the bar date to December 9, 2009.[12] The receivership court agreed, and the notice setting the second claims bar date expressly provided that any person who failed to timely file a claim would be barred from sharing in a distribution from the receivership estate.[13]

### The Alleged Representation

Three months before the second claims bar date expired, Ms. Chavez-Ruark called Jim Wilkes (who represented each of the six wrongful death claimants) to remind him of the upcoming claims bar date.[14] During the call, Wilkes confirmed that he was aware of the second claims bar date but advised Ms. Chavez-Ruark that none of his clients (other than the Estate of Jones) would file a claim in the receivership proceedings or seek distribution from the receivership estate.[15] Ms. Chavez-Ruark had a second telephone conversation with Wilkes on November 9, 2009—one month before the second claims bar date expired.[16]

During that second call, Wilkes again confirmed that none of his clients (other than the Estate of Jones) would file a claim in the receivership proceedings or seek distribution from the receivership estate.[17] Ms. Chavez-Ruark testified that Wilkes told her the $5-6 million in receivership assets were mere "peanuts" and that he was not interested in sharing in that distribution because his clients were going to pursue claims against "bigger fish"—namely,

---

[12] Doc. No. 894-1 at ¶¶ 10-12; Doc. No. 895-1 at ¶¶ 10-12.

[13] Doc. No. 894-1 at ¶ 12; Doc. No. 895-1 at ¶ 12.

[14] Doc. No. 894-1 at ¶ 13; Doc. No. 895-1 at ¶ 13.

[15] Doc. No. 894-1 at ¶ 13; Doc. No. 895-1 at ¶ 13. Mr. Grochal, understandably, does not specify during which of the two phone calls Wilkes told Ms. Chavez-Ruark that he would not be filing a claim in the receivership proceeding.

[16] Doc. No. 894-1 at ¶ 13; Doc. No. 895-1 at ¶ 14.

[17] Doc. No. 895-1 at ¶ 14.

Fundamental Administrative Services, Rubin Schron, Murray Forman, and Leonard Grunstein.[18] During one of his calls with Ms. Chavez-Ruark, Wilkes apparently told her that another lawyer (David Wacksman) had all the information the THI Receiver would need to substantiate claims against Fundamental Administrative Services, Schron, Forman, and Grunstein.[19] Ultimately, the second claims bar date came and went without any of the wrongful death claimants (other than Jones) filing a claim in the receivership proceeding.[20]

### Withdrawal of THI's and THMI's Defense

Given that and Wilkes' prior representations, the THI Receiver says he made the decision to withdraw his defense in the six pending wrongful death cases.[21] According to the THI Receiver, it was no longer a prudent use of the receivership estate's assets to keep defending THI and THMI since none of Wilkes' clients (other than the Estate of Jones) had timely filed a claim.[22] And without a claim, Wilkes' clients would not be entitled to a distribution from the estate, which meant the THI Receiver did not have to fear a default judgment against THMI depleting the receivership assets. So the THI Receiver began instructing its counsel to withdraw from the wrongful death cases sometime around May 2010.[23]

---

[18] Doc. No. 895-1 at ¶ 18. Ms. Chavez-Ruark was uncertain whether the statement about the receivership assets being "peanuts" occurred during the first or second telephone conversation, but she was certain that it occurred during one of them.

[19] Doc. No. 895-1 at ¶ 18. Ms. Chavez-Ruark likewise was uncertain whether the statement about Wacksman having information about the third-party claims occurred during the first or second telephone conversation. In either case, she testified she was certain that conversation occurred as well.

[20] Doc. No. 894-1 at ¶ 11, 14 & 15; Doc. No. 895-1 at ¶¶ 11, 15 & 16.

[21] Doc. No. 894-1 at ¶¶ 16 & 17; Doc. No. 895-1 at ¶ 20 & 21.

[22] Doc. No. 894-1 at ¶ 16; Doc. No. 895-1 at ¶ 21.

[23] Doc. No. 894-1 at ¶ 16; Doc. No. 895-1 at ¶ 21.

### The Estate of Jackson Judgment

On May 18, 2010, the lawyers representing THI and THMI in the *Jackson* case—at the direction of the THI Receiver—withdrew their representation.[24] Two months later, the Estate of Jackson obtained a $110 million judgment against THI and THMI after an "empty chair" trial.[25] The Estate of Jackson then initiated proceedings supplementary against a number of entities (including the Debtor, Fundamental Administrative Services, Schron, Forman, and Grunstein) in an attempt to collect on the judgment.[26] And on September 13, 2011, a $110 million judgment was entered against the Debtor and others in the proceedings supplementary.[27] Neither THI nor THMI appealed the underlying *Jackson* judgment. And the Debtor never appealed the judgment in the proceedings supplementary.

### The *Creekmore* Motion

Four months after obtaining its judgment against THI and THMI, the Estate of Jackson (and the plaintiffs in the remaining wrongful death cases) filed a motion in a state court case pending in Miami-Dade County styled *Trans Health, Inc. v. Creekmore*.[28] The THI Receiver had previously filed that action to domesticate his Maryland receivership order and seek stays of the wrongful death cases pending in Florida.[29] The motion filed by the Estate of Jackson (and others) in the *Creekmore* case asked the state court to declare that they had timely filed claims in the

---

[24] Doc. No. 894-1 at ¶ 18; Doc. No. 895-1 at ¶ 22.

[25] Doc. No. 894-1 at ¶ 19; Doc. No. 895-1 at ¶ 23.

[26] Doc. No. 894-1 at ¶ 30 & 31;

[27] Doc. No. 894-1 at ¶ 30 & 31;

[28] Doc. No. 894-1 at ¶ 26; Doc. No. 895-1 at ¶ 25.

[29] Doc. No. 894-1 at ¶¶ 23 & 24; Doc. No. 895-1 at ¶ 25.

Maryland receivership proceedings.[30] To date, that motion has not been ruled on. And none of Wilkes' clients have otherwise made any attempt to seek distribution from THI's receivership estate.

## The Claim Objection

Just three months after obtaining a $110 million judgment against the Debtor in the *Jackson* proceedings supplementary, the Estate of Jackson initiated this involuntary case under chapter 7.[31] The Debtor did not respond to the involuntary petition, so the Court entered an order for relief. On February 22, 2012, the Estate of Jackson filed a $110 million claim.[32] The Debtor has objected to the Estate of Jackson's claim—which is based on its $110 state court judgment—on the basis that the state court judgment is void.[33]

The Estate of Jackson now seeks summary judgment on the Debtor's objection to its proof of claim.[34] The Estate of Jackson says the Court should overrule the Debtor's objection as a matter of law because (i) its state court judgment is entitled to full faith and credit under 28 U.S.C. § 1738; (ii) the Debtor is barred by the doctrines of res judicata and collateral estoppel from relitigating the judgment; and (iii) this Court is barred by the *Rooker-Feldman* doctrine from exercising appellate jurisdiction over a state court judgment.[35] The Debtor, however, points to one exception to the *Rooker-Feldman* doctrine: extrinsic fraud. The Debtor says that the

---

[30] Doc. No. 894-1 at ¶ 26; Doc. No. 895-1 at ¶ 25.

[31] Doc. No. 1.

[32] Claim No. 2.

[33] Doc. No. 697.

[34] Doc. Nos. 815, 816 & 817.

[35] Doc. No. 815 at 7; Doc. No. 817.

7

Rooker-Feldman doctrine is inapplicable to state court judgments procured by extrinsic fraud.[36] So the primary issue on summary judgment is whether the state court judgment was procured by extrinsic fraud.

## Conclusions of Law[37]

The parties generally disagree on the standard for determining whether the *Jackson* judgment was procured by extrinsic fraud. On the one hand, the Estate of Jackson generally looks to the elements for a fraudulent misrepresentation claim under Florida law.[38] Its position basically is that the Debtor must prove Wilkes made a material misrepresentation to the Debtor that the Debtor relied on to its detriment.[39] The Estate of Jackson says the Debtor cannot prove fraud here because a present statement of future conduct does not give rise to a claim for fraud, and besides, it also says that fraud is personal, so the Debtor cannot have relied on false statements made to others (there is no record evidence that anyone made a misrepresentation to or committed fraud on the Debtor).[40] The Debtor, on the other hand, says all it needs to show to prove extrinsic fraud is that Wilkes took some act that induced the THI Receiver into abandoning his defense of the *Jackson* case.[41] Regardless of which standard the Court applies, the Debtor must show, at a minimum, that Wilkes made a false statement.

---

[36] Doc. No. 897 at 15-17.

[37] This Court has jurisdiction over this contested matter under 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

[38] Doc. No. 816 at 12-17.

[39] *Id.*

[40] *Id.*

[41] Doc. No. 897 at 15-17.

And there is no record evidence that Wilkes made a false statement. The Debtor hinges its fraud claim on Wilkes' representation to Ms. Chavez-Ruark that his clients had no intention of filing a claim in THI's receivership proceedings because they were going after "bigger fish."[42] Yet, there is no dispute that none of the wrongful death claimants (other than the Estate of Jones) filed a claim in THI's receivership proceeding. In an affidavit Ms. Chavez-Ruark filed in the *Jackson* case, she stated that the "Jackson Estate did not file a proof of claim in the adversary proceeding."[43] And in another case, she filed an affidavit stating that "none of the Wilkes Clients other than the Jones estates filed proofs of claim."[44] Nor is there any dispute that Wilkes' clients, in fact, went after (presumably) "bigger fish." That is what the *Jackson* proceedings supplementary were about. In other words, Wilkes was exceedingly candid to the THI Receiver (and his counsel) about his strategy going forward, and he did exactly what he said he was going to do.

The fact that Wilkes' clients filed a motion in the *Creekmore* case does not somehow render his prior statements false or fraudulent. At worst, Wilkes changed his litigation strategy after initially tipping his hand to the THI Receiver. And present statements of future intent do not give rise to a claim for fraud. In any event, other than the mere filing of the *Creekmore* motion, there is no record evidence that the wrongful death claimants are pursuing THI's receivership assets. The reality is that the *Creekmore* motion has little bearing on the big picture that Wilkes painted to Ms. Chavez-Ruark. The real harm alleged is that the wrongful death claimants are

---

[42] Doc. No. 697; Doc. No. 897 at 18-25.

[43] Doc. No. 815, Ex. 1 at ¶ 5.

[44] Doc. No. 895-1, Ex. A at ¶ 12.

9

using the judgment against THI and THMI in *Jackson*—obtained after the THI Receiver withdrew his defense—to pursue "bigger fish."

But the THI Receiver cannot claim he was surprised that Wilkes moved forward with getting the default judgments against THI and THMI. After all, the THI Receiver concedes that Wilkes told his counsel that he was bypassing the receivership proceeding because he intended on pursuing "bigger fish." And it was—or at least it should have been—obvious to the THI Receiver that a judgment against THI and THMI was a predicate to pursuing "bigger fish." Accordingly, there is no record evidence of any extrinsic fraud.

## Conclusion

According to the Debtor, it is improper to grant summary judgment on a fraud claim. To be sure, summary judgment is generally disfavored in fraud cases. But as the court recognized in *Peninsula Yacht Cay Development, Inc. v. South Floridabank Savings Association*, "there are circumstances which will permit summary judgment even where fraud is alleged."[45] And this is one of those circumstances. There is no genuine issue of material fact that the statement that the Debtor bases its extrinsic fraud claim on is true.

And since there is no extrinsic fraud, the *Jackson* judgment is entitled to full faith and credit in this Court, and this Court is barred by the doctrines of res judicata and collateral estoppel—as well as the *Rooker-Feldman* doctrine—from setting it aside.[46] This is not a case were the parties have not had an opportunity to be heard in state court. In fact, many of the arguments raised by the Debtor are being (or have been) asserted in *Jackson* and the other

---

[45] 552 So. 2d 1139, 1140 (Fla. 3d DCA 1989).

[46] *See* 28 U.S.C. § 1738 (providing that the judicial proceedings of any state "shall have the same full faith and credit in every court within the United States"); *In re Dicks*, 306 B.R. 700, 702 n.4 (Bankr. M.D. Fla. 2004) (explaining that the "*Rooker-Feldman* doctrine is a judge-made doctrine establishing the principle that lower federal courts have no jurisdiction to review state court judgments").

wrongful death cases still pending in state court. The fact that the Debtor and others are not having success with those arguments is not a reason to invoke this Court's jurisdiction to set aside a state court judgment. Accordingly, it is

**ORDERED**:

1. The Debtor's objection to Claim No. 2 is hereby OVERRULED.

2. The Estate of Jackson shall have an allowed claim in the amount of $110 million.

**DONE** and **ORDERED** in Chambers at Tampa, Florida, on ___June 21, 2013___

Michael G. Williamson
United States Bankruptcy Judge

Attorney Isaac R. Ruiz-Carus is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

**Harley E. Riedel, Esq.**
**Stichter Riedel Blain & Prosser, P.A.**
*Counsel for Estate of Jackson*

**Isaac R. Ruiz-Carus, Esq.**
**Wilkes & McHugh, P.A.**
*Counsel for Estate of Jackson*

**Brian K. Gart, Esq.**
**Berger Singerman LLP**
*Counsel for Debtor*