UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                          Case No. 8:11-bk-22258-MGW
                                                Chapter 7
Fundamental Long Term Care, Inc.,

         Debtor.
_____/

## MEMORANDUM OPINION AND ORDER GRANTING
## JOINT MOTION TO COMPROMISE WITH KRISTI ANDERSON

The Trustee and Kristi Anderson have entered into a proposed compromise that obligates

Ms. Anderson to provide discovery under Rule 2004, consistent with prior rulings by this Court,

in exchange for the Trustee dismissing malpractice and unlicensed practice of law claims the

Trustee has filed against her. The parties also included a bar order enjoining third parties from

suing Ms. Anderson for performing under the compromise. The Court is asked to determine

whether the proposed compromise—including the bar order—is fair and equitable and in the best

interests of the estate.

The Court concludes that the proposed settlement satisfies the *Justice Oaks* standards.

More importantly, the Court concludes that the bar order is necessary to carry out the provisions

of the Bankruptcy Code and to prevent third parties (including Fundamental Administrative

Services) from defeating this Court's jurisdiction. Accordingly, the Court will approve the

proposed compromise.

### Background

In April 2012, the Trustee asked the Court for authority to conduct a Rule 2004 exam

of—and seek production of documents from—Kristi Anderson (Fundamental Administrative

Services' former in-house counsel) and others.[1] Fundamental Administrative Services objected to Ms. Anderson's Rule 2004 exam. Because of that (and other objections to various other Rule 2004 motions), the Court entered an omnibus discovery order that governed the procedure for examining witnesses and producing documents.[2]

Under the Court's omnibus discovery order, the Trustee was allowed to examine and seek production of documents from witnesses (including Ms. Anderson) regarding (i) the Debtor's assets, liabilities, and businesses; (ii) control of the Debtor's assets and operations; (iii) potential Chapter 5 causes of action; (iv) the interrelationship with other business entities; and (v) the potential need to include other business entities or assets in the Debtor's bankruptcy estate.[3] While the order limited the scope of interested parties' participation in the Rule 2004 examinations, it specifically preserved all claims of privilege.[4]

And, in fact, several parties raised claims of privilege in response to the Trustee's request for production or turnover of the litigation files for six wrongful death cases filed against Trans Health, Inc. ("THI") and Trans Health Management, Inc. ("THMI"). Initially, THI's state court receiver and several law firms representing THI and THMI in the wrongful death cases raised the attorney-client privilege on behalf of THMI. After the Court concluded that the Trustee—standing in the shoes of THMI's sole shareholder (the Debtor) —had the right to control THMI's privilege, the same parties claimed that the litigation files were protected by THMI's attorney-client, common interest, and joint defense privileges.

---

[1] Doc. Nos. 50 & 119.

[2] Doc. No. 216.

[3] *Id.* at ¶ 15.

[4] *Id.* at ¶ 17 & 18.

In addition, Ms. Anderson, along with Christine Zack (also in-house counsel for Fundamental Administrative Services), asserted the work product privilege on her own behalf. The Court asked the parties to brief the various privilege issues. And after considering 34 memoranda filed by the parties and hearing hours of argument, the Court issued a comprehensive Memorandum Opinion addressing whether THMI's litigation files from the wrongful death cases were protected from disclosure to the Trustee by the attorney-client, common interest, joint defense, or work product privileges.[5]

As set forth in its March 2013 Memorandum Opinion, the Court concluded that the Trustee is entitled to invoke the co-client exception to the attorney-client privilege to obtain (i) any communications between THI (and the THI Receiver) and the law firms representing THI and THMI in the wrongful death cases; (ii) any communications between Fundamental Administrative Services (including Ms. Zack and Ms. Anderson) and the law firms representing THI and THMI (but not communications solely between Fundamental Administrative Services and the THI Receiver); (iii) communications between the parties to the settlement agreement (and their lawyers) *with respect to the defense of the wrongful death cases*; and (iv) copies of the litigation files (including any attorney work product) for the wrongful death cases.[6] The Court, however, imposed two important limitations on its rulings.

First, the Court concluded that the Trustee is not entitled to any communications or litigation files relating to the defense of any proceedings supplementary in state court, opposition to the Trustee's efforts to obtain the litigation files, the Trustee's efforts to control the defense of THMI in the wrongful death cases, or other issues unrelated to the defense of the wrongful death

---

[5] Doc. No. 716.

[6] *In re Fundamental Long Term Care, Inc.*, 489 B.R. 451, 477 (Bankr. M.D. Fla. 2013).

cases.[7] Second, the Trustee and her attorneys are not permitted to share any of the information they obtain under the co-client exception with any third party that would destroy the attorney-client, common interest, joint defense, and work product privileges (such as the plaintiffs in the wrongful death cases or their attorneys).[8]

After the the Court issued its Memorandum Opinion, Ms. Anderson (and others) raised some additional issues regarding production of THMI's litigation files.[9] For starters, Ms. Anderson took the position that production of the files under Rule 2004—even if not privileged—is barred by the "pending proceeding" rule.  Besides, she claimed production was not appropriate because the district courts presiding over the malpractice and unlicensed practice of law actions the Trustee filed against her had previously stayed discovery. Recently, the Trustee and Ms. Anderson agreed to compromise those district court actions and the discovery issues between them.[10]

Under the terms of their agreement, Ms. Anderson agreed to (i) withdraw her personal objections to production of THMI's litigation files; (ii) appear for a Rule 2004 exam; and (iii) produce any documents within her possession, custody, or control that fall within the scope of the Court's omnibus discovery order.[11] The Trustee, in exchange, agreed to dismiss the district court malpractice and unlicensed practice of law claims against Anderson and give her a full release of all claims that were or could have been asserted by the Debtor or THMI.[12] The Trustee

---

[7] *Id.* at 477-78.

[8] *Id.*

[9] Doc. No. 766 at 3 (citing Doc. No. 760).

[10] Doc. No. 876.

[11] *Id.* at ¶ 8.

[12] *Id.*

also agreed to seek a bar order prohibiting any third party from suing Ms. Anderson or her counsel for complying with the compromise agreement.[13]

Rather than object to the proposed compromise, Fundamental Administrative Services sought an injunction from a federal district court in Maryland enjoining Ms. Anderson from entering into the compromise with the Trustee and disclosing privileged information.[14] Although the complaint for injunctive relief described this bankruptcy case, it was completely devoid of any mention of the Court's omnibus discovery order establishing a process for preserving privilege claims or its two Memorandum Opinions (totaling 65 pages) resolving a variety of privilege claims.[15] When Ms. Anderson's counsel pointed all of that out to the Maryland district court during an emergency injunction hearing, the district court did not enjoin Anderson from entering into the compromise and instead deferred to the process this Court had already established for protecting privileged information.[16]

Fundamental Administrative Services jointly with others has since objected to the compromise in this case. It primarily objects to the motion to compromise for two reasons.[17] First, it says the compromise contemplates Ms. Anderson selling privileged information to the Trustee.[18] Second, it says the bar order is grossly overreaching and legally unsustainable.[19] For those reasons, it asks the Court not to approve the compromise.

---

[13] *Id.*

[14] That action, which is pending in the United States District Court for the District of Maryland (Northern Division), is styled *Fundamental Administrative Services, LLC v. Anderson*, Case No. 1:13-cv-010708-JKB.

[15] Md. Dist. Ct. Doc. No. 1.

[16] Doc. No. 914-2 at 22-27.

[17] Doc. No. 914.

[18] *Id.* at ¶¶ 2-3.

[19] *Id.*

**Conclusions of Law**[20]

The Court should only approve the compromise if it is fair and equitable and in the best interests of the estate.[21] In making that determination, the Court must look to the *Justice Oaks* factors.[22] Those factors are: (i) the probability of success in the litigation between the Trustee and Anderson; (ii) the difficulties, if any, to be encountered in collection; (iii) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and (iv) the paramount interests of the creditors and a proper deference to their reasonable views.[23] After reviewing the *Justice Oaks* factors, the Court finds that the compromise should be approved.

The *Justice Oaks* factors, taken together, weigh in favor of approving the compromise. The probability of success in the pending litigation against Ms. Anderson is an open question. But the difficulty of collection from her is less so. The Trustee is rightly concerned about her ability to collect from Ms. Anderson because Ms. Anderson is a single mother of three who is currently out of work. Given that, and the expense and complexity of litigating the claims between the Trustee and Ms. Anderson, the Court concludes that the settlement is fair and equitable and in the best interests of the estate.

The real objection here is by Ms. Anderson's former employer (Fundamental Administrative Services). Fundamental Administrative Services says the Court should not approve the agreement because it permits Anderson to disclose Fundamental Administrative

---

[20] This Court has jurisdiction over this contested matter under 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

[21] *Rivercity v. Heprel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1990).

[22] *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir. 1990).

[23] *Id.* at 1549.

6

Services' privileged communications. And it says the bar order is completely unnecessary—indeed, completely inappropriate. Fundamental Administrative Services' objection, however, is unfounded.

For starters, there is nothing in the compromise that suggests the parties are contemplating Ms. Anderson disclosing Fundamental Administrative Services' privileged information. The compromise merely provides that Ms. Anderson will withdraw any of her personal objections to producing THMI's litigation files (she previously asserted personal objections under the work product privilege and pending proceeding rule), appear for a Rule 2004 exam, and produce documents within the scope of the Court's omnibus discovery order.[24] The part of the compromise relating to the withdrawal of privilege objections could not relate to Fundamental Administrative Services' privilege because Anderson (as a former employer) does not hold that privilege, and the Court's omnibus discovery order specifically reserved to Fundamental Administrative Services the right to assert privilege objections to testimony or the production of documents under Rule 2004.

That leaves the bar order for consideration. Fundamental Administrative Services says there is no Eleventh Circuit precedent for a bar order under the facts of this case. The Court disagrees. As this Court explained in *In re GunnAllen Financial*, the Eleventh Circuit first authorized bankruptcy courts to approve a bar order in order to effectuate a settlement in *In re Munford*.[25] In *Munford*, the Eleventh Circuit explained that Bankruptcy Code § 105, which provides that the bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, is ample authority for entry

---

[24] Doc. No. 876 at ¶ 8.

[25] *In re GunnAllen Fin., Inc.*, 443 B.R. 908, 915 (Bankr. M.D. Fla. 2011).

of a bar order.[26] And the Supreme Court has recognized the authority of bankruptcy courts to enter injunctive relief when necessary to prevent a party from defeating its jurisdiction.[27]

The Eleventh Circuit, in *In re Superior Homes & Investments, LLC*, recently reaffirmed those principles in an unpublished decision entered less than two weeks ago.[28] In that case, the Eleventh Circuit explained that it previously ruled in *Munford* that bankruptcy courts had jurisdiction to bar third-party lawsuits that could conceivably affect the handling and administration of the bankruptcy estate and that the entry of the bar order in that particular case "was well within the bankruptcy court's power as a court sitting in equity."[29] The Eleventh Circuit also cited with approval its prior ruling in *Alderwoods Group, Inc. v. Garcia* that bankruptcy courts may issue any order (including one awarding injunctive relief) that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.[30] Ultimately, the Eleventh Circuit affirmed the bankruptcy court's entry of a bar order in *Superior Homes* because it, in part, prevented creditors from making "an end-run around the normal bankruptcy procedure for distribution of the Estate."[31] So the question here is whether the proposed bar order is necessary to carry out the provisions of the Bankruptcy Code or prevent a third party from defeating this Court's jurisdiction.

---

[26] *Munford v. Munford, Inc. (In re Munford)*, 97 F.3d 449, 454-55 (11th Cir. 1996).

[27] *Cont'l Ill. Nat'l Bank & Trust Co. of Chicago v. Chicago, R.I & P. Ry. Co.*, 294 U.S. 648, 675 (1935).

[28] *Apps v. Morrison (In re Superior Homes & Invs., LLC)*, 2013 WL 2477057, at *2-3 (11th Cir. Jun. 10, 2013) (citing *Munford*, 97 F.3d at 454-55 and *Cont'l Ill Nat'l Bank*, 294 U.S. at 675).

[29] *Id.* at *2.

[30] *Id.* (citing *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 967 n.19 (11th Cir. 2012)).

[31] *Id.* at 3.

Perhaps the best evidence that the bar order is necessary for those reasons is Fundamental Administrative Services' own conduct in this case. The most recent example is the Maryland injunction action. To put it plainly, there was no reason for Fundamental Administrative Services to go to Maryland to resolve privilege concerns that his Court has spent the better part of a year dealing with. This Court—through its omnibus discovery order—put in place a protocol to preserve privilege objections. And even a cursory review of the Court's two Memorandum Opinions addressing privilege raised by the parties shows that the process put in place by the omnibus discovery order is working.[32] Yet, Fundamental Administrative Services turned to a district court in Maryland to raise issues that fall within the scope of this Court's prior orders.

What is most troubling about that the injunction action is that Fundamental Administrative Services never disclosed to the Maryland district court the existence of this Court's previous privilege (and discovery) rulings.[33] In fact, Fundamental Administrative Services' counsel seemed unaware of those rulings during the injunction hearing.[34] While the Court is not making any findings, it is hard not to conclude that Fundamental Administrative Services pursued the Maryland proceeding because it was not pleased with this Court's prior rulings.[35] In that regard, it is worth noting that the Maryland injunction action is not the first time that Fundamental Administrative Services has interfered with the administration of this estate.

---

[32] *In re Fundamental Long Term Care, Inc.*, 489 B.R. 451 (Bankr. M.D. Fla. 2013); *In re Fundamental Long Term Care, Inc.*, 2012 WL 4815321 (Bankr. M.D. Fla. Oct. 9, 2012).

[33] Md. Dist. Ct. Doc. Nos. 1 & 5; Doc. No. 914-2.

[34] Doc. No. 914-2 at 24.

[35] Ms. Anderson filed a motion for sanctions (Doc. No. 902). The Trustee filed a motion to enforce this Court's prior orders and the automatic stay (Doc. 912). Both of those motions relate to the Maryland district court case. This Court has not yet ruled on either of those motions.

Fundamental Administrative Services previously sued THMI (the Debtor's wholly owned subsidiary) in district court in New York seeking a declaration that any causes of action THMI may have against Fundamental Administrative Services (and others) for fraud and fraudulent transfers—which are potentially part of this bankruptcy estate—were barred by the statute of limitations. In enjoining the New York action, this Court noted its concern that Fundamental Administrative Services was interfering with the administration of this estate:

> And so the idea that, as a tactic in this litigation, a party can counter attack in another jurisdiction, it's certainly proactive, I must say. It's aggressive. But it's way over the top as far as interfering with the administration of this case and the assets that may or may not be in this case, but the assets that people are talking about. This Court has exclusive jurisdiction over all property of the estate.[36]

Based on Fundamental Administrative Services' prior conduct in this case, the Court concludes that the bar order is necessary to carry out the provisions of the Bankruptcy Code or prevent the defeat of this Court's jurisdiction. The Court also concludes—based on the filings in this case and the argument of counsel—that the bar order is integral to the Trustee's compromise with Ms. Anderson and is fair and equitable.

### Conclusion

Accordingly, it is

**ORDERED**:

1.       The motion to compromise is GRANTED.

2.       The objection filed jointly by Fundamental Administrative Services and others is OVERRULED.

---

[36] Doc. No. 599 at 46-47.

3.      The Trustee and Ms. Anderson are hereby authorized and directed to effectuate

the terms of the Compromise as follows:

(a)      Ms. Anderson shall withdraw any and all objections to production of litigation files and other relevant documents that are responsive to the Trustee's discovery requests. Ms. Anderson expressly preserves her own personal attorney-client privilege and any other privilege she may hold, including her counsel's work product, in connection with her defense of the District Court Actions,[37] her participation in this bankruptcy case, and her employment matters.

(b)      Ms. Anderson shall appear for a continuation of her Rule 2004 Examination at a time and venue agreed upon by Ms. Anderson and the Trustee. That examination may be continued from time to time over multiple examination settings.

(c)      Ms. Anderson shall produce any documents in her possession, custody, or control related to (i) the Debtor's assets, liabilities, and business; (ii) control of the Debtor's assets and operations; (iii) potential Chapter 5 causes of action; (iv) the interrelationship with other business entities; and (v) the potential need to include other business entities or assets in the Debtor's bankruptcy estate, as well as any further documents the Trustee may request in the future, subject only to the objections of third parties to such production. Ms. Anderson shall not individually object to such production except as provided in subparagraph (a), above.

(d)      The Trustee and THMI shall immediately dismiss the District Court Actions, as against Ms. Anderson only, with prejudice.

(e)      The Trustee shall grant Ms. Anderson and her counsel a full release of all claims that have been or might be asserted by the Debtor, the Trustee, or THMI, whether known or unknown.

---

[37] The "District Court Actions" are two pending lawsuits by the Trustee and Trans Health Management, Inc. ("THMI") against Ms. Anderson, among others, pending in the United States District Court for the Middle District of Florida, Case No. 12-cv-01854 and Case No. 12-cv-01855.

4.      The Rule 2004 examination of Ms. Anderson and any document production from

her is governed by this Court's previous rulings, including:

(a)      Omnibus Order Establishing Discovery Procedures and
Protocol for the Production of Documents and the
Examination of Witnesses (Doc. 216)

(b)      Order Granting Motion for 2004 Examination of Kristi
Anderson (Doc. 232)

(c)      Order Denying Motion To Vacate Omnibus Order, or in the
Alternative, for Protective Order and Amending Omnibus
Order Establishing Discovery Procedures and Protocol of
Documents and the Examination of Witnesses (Doc. 313)

(d)      Ruling in open court on September 17, 2012 denying the
Trustee's motion to compel documents from Christine Zack
(Doc. No. 373 at 55-56)

(e)      Order and Memorandum Opinion on Trustee's Motions for
Show-Cause Orders (Doc. 409)

(f)      Order Granting Motion for Rule 2004 Examination of and
Production of Documents from Law Firms Representing
the Debtor or THMI (Doc. 427)

(g)      Memorandum Opinion on Attorney-Client Privilege and
Work Product Issues (Doc. 716)

(h)      Order on Trustee's Third Motion to Compel (Doc. 919)

(i)      Order and Memorandum Opinion on Motion for
Reconsideration of Privilege Issues (Doc. 920).

5.      The Court hereby ENJOINS any and all third parties from suing or making any

claim against Ms. Anderson or her counsel, Steven N. Leitess and Leitess Friedberg PC, for

complying with this Order and effectuating the compromise with the Trustee. The third parties

hereby barred from such actions shall specifically include, but not be limited to: THMI;

Fundamental Long Term Care, Inc.; all creditors of the Debtor or THMI; Fundamental

Administrative Services, LLC; Fundamental Clinical Consulting, LLC; Christine Zack; Tydings

& Rosenberg, LLP; Maria Chavez-Ruark; Alan Grochal (both individually and as Receiver for THI); Trans Healthcare, Inc.; Quintairos, Prieto, Wood & Boyer, P.A.; Kevin Richardson; Albert Ferrera; Concepción Martinez & Bellido, PA; Thomas Valdez; Fundamental Long Term Care Holdings, LLC; Murray Forman; Leonard Grunstein; General Electric Capital Corporation; THI of Baltimore, Inc.; Ruben Schron; Ventas, Inc.; Ventas Realty; GTCR Golder Rauner; GTCR Fund VI; GTCR Partners VI; GTCR VI Exec. Fund; GTCR Associates VI; Edgar Jannotta; THI Holdings, LLC; Michael Sandnes; and all the foregoing parties' lawyers, agents, affiliates, officers and directors.

6.      Ms. Anderson may otherwise pursue separate resolution of claims, whether threatened or brought, by third parties, including the Debtor's creditors and their attorneys, or other parties in all cases and venues.

7.      This Court shall retain the fullest jurisdiction necessary to enforce this Order, to give effect to the compromise, and to resolve any issues that arise out of this Order or the compromise.

**DONE** and **ORDERED** in Chambers at Tampa, Florida, on ___June 21, 2013___.


_____
Michael G. Williamson
United States Bankruptcy Judge


Attorney Steven N. Leitess is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

**Steven M. Berman, Esq.**
**Shumaker Loop & Kendrick, LLP**
*Counsel for Trustee*

**Steven N. Leitess, Esq.**
**Leitess Friedberg PC**
*Counsel for Kristi Anderson*

**Gregory M. McCoskey, Esq.**
**Akerman Senterfitt**
*Counsel for Fundamental Administrative*
*Services, LLC and Fundamental Clinical Consulting, LLC*

**Paul V. Possinger, Esq.**
**Proskauer Rose LLP**
*Counsel for Fundamental Long Term Care*
*Holdings, LLC, Murray Forman, and*
*Leonard Grunstein*