UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                                              Case No. 8:11-bk-22258-MGW
                                                                    Chapter 7
Fundamental Long Term Care, Inc.,

     Debtor.
_____/

**ORDER AND MEMORANDUM OPINION ON TRUSTEE'S MOTION TO
ENLARGE TIME PERIOD TO BRING AVOIDANCE AND OTHER ACTIONS**

Under the Eleventh Circuit's decision in *In re International Administration Services*, this Court has the discretion to enlarge the two-year limitations period under Bankruptcy Code § 546(a) for bringing avoidance actions where the trustee has been unable to complete relevant discovery relating to her claims despite the exercise of due diligence. Here, the Trustee's investigation of potential avoidance (and other) actions has been complicated by numerous issues that have arisen during the course of the Trustee's investigation as set out in more detail in the various rulings of the Court dealing with discovery.[1] Because of these complications, the Trustee requests additional time to complete Rule 2004 examinations. The Court agrees that some additional time is needed, that an enlargement of the two-year limitations period would actually promote public policy, and that a short extension will not unfairly prejudice the targets. Under the circumstances, the Court concludes it is appropriate to enlarge the two-year limitations period under § 546(a) to the limited extent set forth below.

---

[1] *In re Fundamental Long Term Care, Inc.*, 2012 WL 4815321 (Bankr. M.D. Fla. Oct. 9, 2012); *In re Fundamental Long Term Care, Inc.*, 489 B.R. 451 (Bankr. M.D. Fla. 2013); *In re Fundamental Long Term Care, Inc.*, 493 B.R. 620 (Bankr. M.D. Fla. 2013).

**Background**

The Court entered its order for relief in this involuntary case on January 12, 2012.[2] Immediately after the order for relief was entered, the Trustee began seeking the Debtor's books and records, as well as those belonging to Trans Health Management, Inc. ("THMI"),[3] in an effort to identify the Debtor's assets (including potential causes of action on behalf of the estate).[4] The Trustee also sought to take the Rule 2004 examination of a number of individuals and entities—such as Fundamental Administrative Services, LLC, Fundamental Long Term Care Holdings, LLC, Murray Forman, Leonard Grunstein, and Rubin Schron—who have consistently been referred to throughout this case (by all concerned) as "targets" of fraudulent transfer and alter ego claims by the Trustee.[5] Six months later, the Court entered an omnibus discovery order governing the Trustee's investigation of potential assets of the estate, including potential avoidance actions.[6]

The omnibus discovery order specifically authorized the Trustee to examine some of the targets under Rule 2004 without further leave of Court.[7] It appears the Trustee completed all but one of eleven initial Rule 2004 exams authorized under the omnibus discovery order sometime in July or August 2013. The Trustee then sought permission to conduct a second round of Rule

---

[2] Doc. No. 6.

[3] THMI is the Debtor's wholly owned subsidiary.

[4] Doc. No. 14; Doc. No. 23; Doc. No. 31 at 4–5; Doc. No. 105 at 6-8; Doc. No. 140.

[5] Doc. Nos. 42–52. The Court will refer to those parties as the "targets" for ease of reference. The "targets" include General Electric Capital Corporation; Fundamental Administrative Service, LLC; THI of Baltimore, Inc.; Fundamental Long Term Care Holdings, LLC; Murray Forman; Leonard Grunstein; Rubin Schron; Ventas, Inc.; GTCR Golder Rauner, LLC; GTCR Fund VI, LP; GTCR Partners VI, LP; GTCR VI Executive Fund, LP; GTCR Associates, VI; Edgar D. Jannotta, Jr.; and THI Holdings, LLC. No inference, of course, should be drawn from the Court's use of the term "targets."

[6] Doc. No. 216.

[7] *Id.* at ¶ 1.

2004 exams.[8] On September 3, 2013, the Court authorized the Trustee to examine another sixteen individuals or entities (most or all of whom are potential targets of avoidance actions) under Rule 2004.[9] The Trustee has not yet begun the second phase of Rule 2004 exams.

That second round of Rule 2004 exams has been delayed, in part, because the targets (understandably) want to coordinate their Rule 2004 exams with the discovery that will be conducted in a series of adversary proceedings that have recently been filed by the targets and the creditors (the Estates of Juanita Jackson, Elvira Nunziata, Joseph Webb, Arlene Townsend, Opal Sasser, James Jones).[10] And the Court, in fact, recently entered a second omnibus discovery order essentially consolidating discovery in the recently filed adversary proceedings and requiring the Trustee to coordinate any Rule 2004 exams of potential targets for the same time as the targets' depositions in the newly filed adversary proceedings.[11] The discovery cut-off date under the new omnibus discovery order is March 14, 2014.[12] So the Trustee says her investigation of potential avoidance actions is not complete.

---

[8] Doc. No. 1111.

[9] Doc. No. 1117.

[10] On September 12, 2013, this Court entered a Memorandum Opinion on the Proper Forum for Fraudulent Transfer and Alter Ego Claims in a separate adversary proceeding filed by the Trustee. In that Memorandum Opinion, the Court concluded that the creditors in the main bankruptcy case should be precluded from pursuing fraudulent transfer or alter ego claims against certain "targets" in state court and that the Chapter 7 Trustee, creditors, and targets should be required to litigate those fraudulent transfer and alter ego claims in one forum. Because no adversary proceeding or request for injunctive relief was pending, however, the Court permitted the targets to file an adversary proceeding and motion for injunctive relief seeking to stay the fraudulent transfer and alter ego claims being pursued by the creditors in state court. So far, the "targets" have filed three adversary proceedings; the creditors have filed a fourth adversary proceeding; and the Trustee has sought to intervene in the creditors' adversary proceeding.

[11] Doc. No. 1234.

[12] *Id.* at ¶ 4(a). Under § 546(a), the Trustee has two years from the order for relief to bring any actions under §§ 544, 545, 547, 548, or 553.

The deadline for bringing avoidance actions under § 546, however, is January 11, 2014—two months before discovery cut-off under the new omnibus discovery order.[13] Because her investigation is not complete, the Trustee says she is not in a position to bring all of her avoidance actions by the end of the two-year limitations period under § 546(a). So she has requested that the Court enlarge the two-year limitation period for an additional year.[14] The targets object to the Trustee's request to enlarge the two-year limitations period under § 546(a) (and § 108).[15]

## Conclusions of Law

There is no question the Court has the authority to enlarge the two-year limitations period under section 546(a).[16] Rule 9006(b) specifically provides that the Court, in its discretion, may enlarge the time period for completing any act required under the Federal Rules of Bankruptcy Procedure.[17] Section 546, of course, is a statute—not a bankruptcy rule. Nevertheless, the Eleventh Circuit Court of Appeals has expressly held that bankruptcy courts can enlarge the § 546(a) two-year limitations period under Rule 9006.[18] And the parties generally seem to agree that the Eleventh Circuit's decision in *In re International Administrative Services, Inc.* is controlling for determining when it is appropriate to extend the § 546(a) two-year limitations period.

---

[13] 11 U.S.C. § 546(a).

[14] Doc. No. 1204. Actually, the Trustee requests until December 31, 2014, to bring her actions, which is just short of one year. It is also worth noting that the Trustee would like to extend the two-year deadline under § 108, as well. Under § 108, any non-bankruptcy statute of limitations that has not expired before the petition date is extended for two years from the order for relief.

[15] Doc. Nos. 1219, 1220, 1221, 1224 & 1226.

[16] *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689 (11th Cir. 2005).

[17] Fed. R. Bankr. P. 9006(a).

[18] *In re Int'l Admin. Servs.*, 408 F.3d at 699.

It is not clear, however, that the parties agree on what the appropriate standard is under *International Administrative Services*. That is, in part, because the Eleventh Circuit considered a court's ability to enlarge the two-year limitations period under § 546(a) from two perspectives. In that case, the bankruptcy court had enlarged the two-year limitations period under § 546(a) twice. The court first enlarged it from June 20, 1998 to July 29, 1998—the day the court was scheduled to hold a hearing on various discovery issues that were impeding the trustee's ability to bring its avoidance actions. That discovery hearing, however, was not held until September 3, 1998. When the court finally held the discovery hearing on September 3, it orally announced it was enlarging the two-year limitations period a second time—this time until February 10, 1999. But the actual order memorializing that ruling was not entered until September 17, 1998. So there was no question the bankruptcy court in *International Administrative Services* intended to enlarge the deadline to February 10, 1999, even if it did not do so in a seamless fashion.

The Eleventh Circuit first considered whether the court had the authority to enlarge the two-year limitations period for bringing avoidance actions "for cause" under Rule 9006. The Eleventh Circuit ultimately concluded that the two-year deadline under § 546 was a statute of limitations subject to enlargement by the court—not a jurisdictional bar or statute of repose (in which case it would not be subject to enlargement). And the Eleventh Circuit concluded that the bankruptcy court orders were sufficient to enlarge the two-year period even though there were gaps between the orders. After concluding the orders were sufficient to enlarge the two-year limitations period, the Eleventh Circuit nevertheless decided, in an abundance of caution, to analyze whether the enlargement of time was appropriate under an equitable tolling analysis.

In doing so, the Eleventh Circuit observed that there were two situations where it is appropriate to equitably toll the § 546(a) limitations period.[19] The first situation involves "active concealment." In situations where fraud goes undetected because the defendant has taken affirmative steps to conceal a fraud it committed, then the statute of limitations is tolled until the plaintiff *actually discovers the fraud*.[20] But in order for equitable tolling to apply in that situation, the defendant must commit fraudulent acts (or make fraudulent misrepresentations) that "are calculated to, and in fact do, prevent the discovery of the cause of action."[21] The second situation, which the Eleventh Circuit describes as more mundane, occurs where the defendant has not actively concealed its fraud but the plaintiff nonetheless has been unable to discover the fraud with the exercise of due diligence.[22] In the second situation, sometimes thought of as "negligent concealment," the statute of limitations does not begin to run until the plaintiff obtains—*or should have obtained*—knowledge of the underlying fraud.[23] Neither the Trustee nor the targets are clear whether they are arguing under the "for cause" or "equitable tolling" standard.

For her part, the Trustee simply says the § 546(a) limitations period should be enlarged because the targets of her potential claims have opposed and significantly delayed the Trustee's investigation and discovery under Rule 2004.[24] She cites to *International Administrative Services* in support of that request. The targets argue that the Trustee cannot satisfy either the "for cause"

---

[19] *Id.* at 701.

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *Id.*

[24] Doc. No. 1204.

or equitable tolling standard because—contrary to the Trustee's allegations—they have not impeded the Trustee's investigation and that, in any event, she is well aware of her claims.[25]

It seems to the Court that the appropriate standard would be the "for cause" analysis under Rule 9006. The Trustee here seeks an enlargement of time before the period has expired (equitable tolling presumably comes into play after the limitations period has expired). And that was the analysis the Eleventh Circuit initially applied in *In re International Administrative Services*, before turning to the equitable tolling analysis in an abundance of caution. So there does not appear to be any reason not to apply the "for cause" analysis. Nonetheless, since the Court concludes that the Trustee satisfies the seemingly higher standard for equitable tolling, the Court will, in an abundance of caution, use that standard to address the Trustee's request to enlarge the two-year limitations period.[26]

In considering whether the Trustee has been precluded from bringing her avoidance claims as a result of the targets' affirmative or negligent conduct, the Court notes as an initial matter that it agrees with the Trustee that her investigation in this case has been delayed due to the targets' active opposition to her discovery efforts. The Court entered its initial omnibus discovery order governing Rule 2004 discovery over sixteen months ago.[27] The idea behind the omnibus discovery order was to streamline the Trustee's investigation of potential causes of action belonging to the estate. To that end, the Court specifically authorized the Trustee to,

---

[25] Doc. Nos. 1219, 1220, 1221, 1224 & 1226.

[26] Presumably, evidence of active or negligent concealment sufficient to equitably toll the two-year limitations period would ordinarily be sufficient to establish "cause" under Rule 9006 to enlarge the limitations period. In this particular case, the Court concludes that the delay of the Trustee's investigation constitutes cause for enlarging the two-year limitations period under §§ 108 and 546.

[27] Doc. No. 216.

without need for the Court's approval, examine eleven individuals and entities.[28] It later ordered Rule 2004 discovery from various law firms representing THMI in the wrongful death cases.[29] The targets and the state court receiver for Trans Health, Inc. (THMI's former parent), however, have objected to the Trustee's Rule 2004 discovery at—almost literally—every turn.

As this Court has stated repeatedly, it has spent the better part of a year resolving discovery disputes. At first, the THI Receiver (and others) objected to the turnover of THMI's litigation defense files based on THMI's attorney-client and work product privilege.[30] After the Court ruled in favor of the Trustee on that issue,[31] the THI Receiver and others raised a second round of privilege objections—this time claiming their own attorney-client and work product privileges.[32] It took over six months to work through those discovery issues alone. And nearly seven months after those discovery issues have been resolved, it appears the document production is still not complete.

To be sure, much of those discovery issues related to the production of THMI's litigation defense files, and that discovery was principally relevant to the Trustee's ability to assume THMI's defense of the wrongful death cases. But, as the Court has pointed out previously, those documents are also relevant to potential claims belonging to the estate.[33] And the time spent dealing with those issues has surely taken away from the finite amount of time the Trustee has to investigate her potential claims. It is clear to the Court that, in large part because of the time

---

[28] *Id.* at ¶ 1.

[29] Doc. No. 423.

[30] Doc. Nos. 244, 268, 269, 286, 354, 360, 363, 383, 384, 385 & 388.

[31] *In re Fundamental Long Term Care, Inc.*, 2012 WL 4815321 (Bankr. M.D. Fla. Oct. 9, 2012).

[32] Doc. Nos. 444, 451, 467, 472, 575, 591 & 631.

[33] *In re Fundamental Long Term Care, Inc.*, 489 B.R. 451, 468 (Bankr. M.D. Fla. 2013).

spent on the other discovery issues, the Trustee was unable to complete the first round of Rule 2004 exams until sometime around August 2013—nearly one year after the Court's aspirational goal.[34]

And because of that delay, the Trustee has been unable to complete—really begin—the second phase of Rule 2004 exams that the Court permitted her to take.[35] On top of that, she still needs to complete the Rule 2004 exam of one of the originally named persons in the Court's omnibus discovery order; obtain the remaining documents she has requested previously; and complete the Rule 2004 exam of Kristi Anderson.[36] As it stands, there can be no question the Trustee's investigation is not complete.

It is worth noting at this point that the Court is not commenting on any party's good faith (or lack thereof) in raising objections to the Trustee's discovery requests. The Court notes—as it has done many times in the past—that this case is unique. That is true not only of the facts of this case, but the legal issues as well. And the stakes are unquestionably high. There is over $1 billion in claims in this case, and the Trustee may be seeking to recover that much from the targets.[37] It is enough to say that the targets cannot credibly claim the Trustee's inability to complete her investigation is a result of any lack of diligence on her part.

---

[34] In the Court's omnibus discovery order, it directed the parties to coordinate the date, time, and location of the first phase of Rule 2004 exams to allow them to be completed by September 14, 2012. Doc. No. 216 at ¶ 2. The Court, however, recognized that was an aspirational—not mandatory—deadline.

[35] It appears from a proposed protocol governing newly filed fraudulent transfer and alter ego adversary proceedings that the Trustee filed with the Court that the Trustee has not begun any of the second phase of Rule 2004 exams. Doc. No. 1214.

[36] The remaining discovery the Trustee needs to take is set forth in her proposed discovery protocol. Doc. No. 1214.

[37] As has been noted previously by the targets on several occasions, the Trustee has estimated that the targets may have exposure to as much as $1 billion in liability. For instance, in her motion to repay a post-petition loan by Wilkes & McHugh, $910.55 of which was used to pay for service-related expenses in this case, the Trustee stated it was her "mission to identify, secure and recover hundreds of millions of (if not more than one billion) dollars in assets, not to mention a tremendous amount of fiduciary, professional liability, fraud and avoidable transfer claims, which properly belong to the Chapter 7 Estate." Doc. No. 544 at ¶ 4.

And the fact that some targets may not be responsible for impeding or delaying the Trustee's investigation is not a basis, by itself, for refusing to enlarge the two-year limitations period for bringing avoidance actions. None of the targets who have raised that issue have cited any authority for that proposition.[38] And the argument, when taken to its logical end, does not hold up. A target that is potentially liable for an avoidance action would essentially receive a windfall if it is another target that actively or negligently conceals the Trustee's potential claim. If the Trustee has been impeded from discovering potential avoidance actions, then the deadline ought to be enlarged as to all claims—not on a party-by-party basis.

The only reason not to enlarge the § 546(a) deadline in this case is if, as the targets claim, the Trustee is already in a position to bring all of her avoidance actions. The targets claim she is, and at first glance, this argument has some appeal. After all, the Trustee has remarked on occasion that "discovery to date has revealed fraudulent conduct of third parties . . . to place Debtor and THMI's assets beyond the reach of creditors, either through various avoidable transfers or by and through a fraudulent creation of assertedly separate entities to house the removed assets and operations."[39] The targets also point out that the Trustee represented to the Court she was in a position to mediate her claims against them. How, they ask, could she mediate claims unless she knew what they were? While the targets raise valid points, the Court overall disagrees with the targets' contention that the Trustee is in a position to bring all of her claims.

The fact that the Trustee may be generally (or perhaps even specifically) aware of some claims does not mean she is aware of all of her potential claims. The targets have openly wondered what other claims the Trustee could conceivably have, other than the claims already

---

[38] Doc. Nos. 1219, 1220, 1221, 1224 & 1226.

[39] Adv. No. 8:12-ap-01198, Adv. Doc. No. 9-1.

brought—and alluded to—by the creditors. And they have implicitly suggested that the Trustee ought to articulate what those claims might be. But that begs the question. If the Trustee could articulate all of her claims, then there would be no need to enlarge the two-year limitations period under § 546(a).

## Conclusion

In the end, tolling the statute of limitations is an equitable remedy, and the equities weigh in favor of enlarging the section 546(a) deadline. If the Court does not enlarge the period for bringing avoidance actions, it will, in effect, be rewarding the targets' opposition (even if justified) during the discovery process. And it would create a perverse incentive for targets of avoidance actions (in this case and others) to oppose discovery. Moreover, there is no real harm to the targets if the Court does enlarge the two-year limitations period. As of now, the targets are defendants to fraudulent transfer and alter ego claims asserted by the creditors in this Court.[40] So the targets are already subject to discovery regarding those claims. If, as the targets suggest, the Trustee does not have any claims other than those already asserted by the creditors, then the targets will be in the exact same position they would be in if the Court does not enlarge the two-year limitations period. Accordingly, the Court concludes it is appropriate to enlarge the period for bringing avoidance actions.

But the Court does not believe the Trustee requires an additional year (the time she requests). While it is true her investigation has been impeded, the Trustee has nevertheless been able to conduct a substantial amount of discovery. For instance, she has concluded at least ten Rule 2004 exams and concedes that she has received tens of thousands of pages of documents.

---

[40] The creditors filed an 83-page adversary complaint seeking declaratory relief on successor liability and alter ego claims against all of the targets. That action is styled *Estate of Juanita Amelia Jackson, et al. v. General Electric Capital Corp., et al.*, 8:13-ap-00893-MGW. And the three adversary complaints filed by the targets essentially seek a declaration they are not liable under any fraudulent transfer, alter ego, or successor liability theory.

Not to mention, she does have the benefit of the investigation the creditors undertook before filing this involuntary case. Given that discovery in the newly filed adversary proceedings has essentially been consolidated, the Court concludes it is appropriate to enlarge the two-year limitations period under § 546 (and § 108) to allow the Trustee to continue her investigation through the close of fact discovery in the adversary proceedings.

Accordingly, it is

**ORDERED:**

1. The Trustee's Motion is GRANTED.

2. The two-year limitations periods in Bankruptcy Code §§ 108 and 546 are hereby enlarged to April 13, 2014 (which is thirty days after the close of discovery in the recently filed adversary proceedings under the omnibus discovery order).[41] In the event the discovery cut-off date in the adversary proceedings is extended under the omnibus discovery order, the Court will consider additional enlargements of the two-year limitations periods under §§ 108 and 546.

**DONE** and **ORDERED** in Chambers at Tampa, Florida, on November 13, 2013

Michael G. Williamson
United States Bankruptcy Judge

---

[41] Doc. 1234 at ¶ 4(a).

12

**Jeffrey W. Warren, Esq.**
  **Bush Ross, P.A.**
**Gabor Balassa, Esq.**
  **Kirkland & Ellis LLP**
*Counsel for GTCR Associates, VI; GTCR Fund VI, LP; GTCR Golder Rauner, LLC; GTCR Partners VI, LP; GTCR VI Executive Fund, LP; Edgar D. Jannotta, Jr.; THI Holdings, LLC*

**Joseph H. Varner, III, Esq.**
**Rod Anderson,  Esq.**
**Holland & Knight LLP**
*Counsel for Rubin Schron*

**Carol A. Licko, Esq.**
**Hogan Lovells US LLP**
*Counsel for General Electric Capital Corporation*

**Daniel J. Weiss**
  **Jenner & Block LLP**
**Hunter W. Carroll**
  **Matthews, Eastmoore, Hardy, Crauwels & Garcia, P.A.**
*Counsel for Ventas, Inc.; Ventas Realty, Limited Partnership*

**Gregory M. McCoskey, Esq.**
 **Akerman Senterfitt**
**Paul V. Possinger, Esq.**
 **Proskauer Rose LLP**
*Counsel for Fundamental Administrative Services, LLC; Fundamental Long Term Care Holdings, LLC*


Attorney Steven M. Berman is directed to serve a copy of this order on interested parties and file of proof of service within 3 days of entry of this order.