UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:    Case No. 8:11-bk-22258-MGW
          Chapter 7

Fundamental Long Term Care, Inc.,

    Debtor.
_____/

**MEMORANDUM OPINION
ON MOTION TO COMPROMISE**

    The Chapter 7 Trustee, the state-court receiver for Trans Healthcare, Inc. ("THI"), and six probate estates (the "Probate Estates") that sued THI and the Debtor's wholly owned subsidiary, Trans Health Management, Inc. ("THMI"), for negligence in state court have reached a compromise resolving all of the claims among them. Under the compromise, the THI Receiver has agreed to withdraw its defense of THI in the lawsuits filed by the Probate Estates. That compromise is contingent on this Court entering a bar order prohibiting any third parties from suing the THI Receiver for withdrawing its defense of THI. The Court must now determine whether to approve the parties' proposed compromise.

    The Court concludes the proposed bar order—an essential term of the compromise—is not fair and equitable to the enjoined parties. The enjoined parties—principally THI's shareholders, investors, and lenders, as well as entities and individuals that allegedly received THMI's assets as part of a "bust out" scheme—specifically bargained for the right to defend THI against any liability. Because the bar order strips the enjoined parties of a valuable right they expressly bargained for without providing them any benefit in return, the bar order is not fair and equitable, and as a consequence, the compromise cannot be approved.

**Factual Background**

The genesis of this entire bankruptcy case—and all of the litigation it has spawned—is six negligence cases the Probate Estates filed against THI and THMI in state court between 2004 and 2009.[1] Initially, THI defended itself and THMI against the six negligence claims. After THI filed for receivership in 2009, its court-appointed receiver continued defending both entities. But in April 2010, the THI Receiver instructed the lawyers defending THI and THMI to withdraw as counsel of record in the negligence cases.[2] Not long after their counsel withdrew, a $110 million default judgment was entered against THI and THMI following an "empty chair" trial in the case filed by the Estate of Jackson.

That is when the Probate Estates' end game became apparent: the Probate Estates intended on rolling up a number of third parties who allegedly participated in a scheme to divest THMI of all of its assets (perhaps worth hundreds of millions of dollars) several years earlier.[3] So the Probate Estates initiated proceedings supplementary against THI's shareholders and investors,[4] THI's primary lenders,[5] and the entities that allegedly received THMI's assets (as

---

[1] Those cases are: *Estate of Jackson v. Alliance Health Care Services, Inc., et al.*, Case No. 2004-CA-003229, Circuit Court, Polk County, Florida; *Estate of Nunziata v. Pinellas Park Nursing Home, Inc., et al.*, Case No. 05-8540-CI, Circuit Court, Pinellas County, Florida; *Estate of Jones v. TFN Health Care Investors, LLC, et al.*, Case No. 2006-06672, Court of Common Pleas, Montgomery County, Pennsylvania; *Estate of Webb v. Gainesville Health Care Center, Inc., et al.*, Case No. 06-CA-2418, Circuit Court, Alachua County, Florida; *Estate of Sasser v. Alliance Health Care Services, Inc., et al.*, Case No. 2006-CA-003511, Circuit Court, Polk County, Florida; and *Estate of Townsend v. Briar Hill, Inc., et al.*, Case No. 2009-CA-001025, Circuit Court, Polk County, Florida.

[2] The reason why the THI Receiver instructed counsel for THI and THMI to withdraw is subject to dispute. The THI Receiver claims lawyers at Wilkes & McHugh, counsel for the Probate Estates, misrepresented to him that the Probate Estates had no intention of pursuing THI's receivership estate. The Probate Estates claim their counsel never made any such representation, and in any event, the representation is not false.

[3] It is unclear when this end game had been developed. The Debtor claims that Jim Wilkes, counsel for the Probate Estates, represented to the THI Receiver sometime before April 2010 (which was before the THI Receiver instructed counsel for THI and THMI to withdraw) that the Probate Estates would not be pursuing the receivership estate assets because they had "bigger fish to fry"—i.e., going after "deep pocket" third parties. Doc. No. 897 at 5-6.

[4] THI's shareholders and investors include THI Holdings, Inc. and a group of entities referred to in this case as the GTCR Group.

well as the individual owners of those entities).[6] The Debtor was one of the entities the Estate of Jackson pursued in proceedings supplementary. In September 2011, the Estate of Jackson obtained a $110 million judgment against the Debtor and others, and then three months later, it forced the Debtor into this involuntary chapter 7 case.

That led the THI Receiver and the third-party targets (i.e., THI's shareholders, investors, and lenders, as well as the parties that allegedly received THMI's assets) to scramble to find a way to defend the remaining five negligence cases. In particular, two cases were set for trial within two months of this bankruptcy case being filed: the *Nunziata* case was scheduled for trial on January 9, 2012; *Webb* was scheduled for trial on February 6, 2012. In an effort to ensure the remaining cases did not go undefended, the targets entered into a settlement agreement with the THI Receiver on January 5, 2012.[7]

Under the January 5 agreement, Fundamental Administrative Services ("FAS") agreed to defend THI, the THI Receiver, and the THI receivership estate (as well as the THI subsidiaries that filed for receivership) from any claims arising out of the negligence cases filed by the Probate Estates.[8] FAS agreed to deposit $800,000 in escrow to fund the costs of that defense. General Electric Capital Corporation ("GECC"), one of THI's lenders, likewise agreed to contribute up to $200,000 toward the defense costs.[9] The January 5 agreement also specifically

---

[5] THI's primary lenders were General Electric Capital Corporation, Ventas, Inc., and Ventas Realty Limited Partnership.

[6] The entities that allegedly received THMI's assets were THI of Baltimore, Inc., Fundamental Long Term Care Holdings, LLC, and Fundamental Administrative Services, LLC. The individuals that owned those entities were Leonard Grunstein and Murray Forman. Rubin Schron is also alleged to have an ownership interest in those entities.

[7] Doc. No. 1509-1.

[8] *Id.* at ¶ 9.1.

[9] *Id.*

provided that FAS would ask the receivership court to declare that the THI Receiver had the right to assign its duty to defend THI to FAS.[10]

Whether the Maryland receivership court ever did so is unclear, but what is clear is that FAS fairly immediately delegated the duty to defend THI back to the THI Receiver, and the THI Receiver immediately set out to retain counsel for THI and THMI. Newly retained counsel for THMI attempted to appear on the company's behalf in the *Nunziata* case on the morning of trial.[11] But the court in that case would not let counsel appear. Likewise, the court in *Webb* would not let newly retained counsel appear for either THI or THMI. Because the state courts would not let newly retained counsel appear on behalf of THI and THMI, both of those cases proceeded to empty-chair trials, and the juries ultimately returned more than $1 billion in verdicts combined.

Shortly after the jury verdict in *Webb*, which came back less than a month after the order for relief in this case, the Chapter 7 Trustee began seeking turnover of all documents belonging to THMI, including THMI's litigation files from the negligence cases.[12] At the time, the Trustee was investigating potential causes of action against the lawyers who had previously withdrawn their defense of THMI. She apparently was also considering taking control of THMI's defense of the negligence cases. The Trustee's attempts to obtain those files touched off a number of hotly contested disputes with the THI Receiver and others.

For starters, the Trustee and THI Receiver fought over who had the right to control THMI's defense—not only of the three cases that had not yet gone to trial but the appeals of the

---

[10] *Id.* at ¶ 11.3.

[11] THI was not a defendant in *Nunziata.*

[12] *See, e.g.,* Doc. No. 23; Doc. No. 31 at pp. 4–5; Doc. Nos. 42-52; Doc. No. 105 at p. 6; Doc. No. 140; Doc. No. 244 & Doc. No. 286.

4

three that had.[13] Part of that fight included whether THMI's litigation files were privileged and, if so, who had the right to invoke the privilege on THMI's behalf since THMI had no officers, directors, or employees.[14] Perhaps more significant, the Trustee fought with the THI Receiver (and others) over whether she was entitled to communications between the THI Receiver and the attorneys defending THI and THMI under the co-client exception to the attorney-client privilege.[15]

While the Court has ruled on both of those issues,[16] the THI Receiver nevertheless is still incurring substantial costs in this bankruptcy case. For instance, the Court has ruled that the Trustee (standing in the shoes of THMI) is entitled to THMI's litigation files, including certain communications between the THI Receiver and lawyers defending THI and THMI.[17] But there are still fights over whether particular documents fall within the category of documents the Court ruled the Trustee is entitled to. On top of that, the THI Receiver is required to review documents turned over to the Trustee under the co-client exception to see whether any of them can be produced to third parties. And of course, the THI Receiver is still incurring costs defending THI in the negligence cases.

Ultimately, four of those cases (the three discussed above—*Jackson*, *Nunziata*, and *Webb*—plus *Townsend*) have been tried by a jury and are currently on appeal, while the

---

[13] *In re Fundamental Long Term Care, Inc.*, 2012 WL 4815321, at *1-8 (Bankr. M.D. Fla. Oct. 9, 2012).

[14] *Id.* at 8-10.

[15] *In re Fundamental Long Term Care, Inc.*, 489 B.R. 451, 460 (Bankr. M.D. Fla. 2013).

[16] *Fundamental Long Term Care*, 2012 WL 4815321, at *7-10; *Fundamental Long Term Care*, 489 B.R. at 463-72.

[17] *Fundamental Long Term Care*, 489 B.R. at 463-70.

remaining two cases—*Jones* and *Sasser*—are set for trial.[18] As discussed above, FAS is obligated to pay the defense costs for those cases under the January 5 agreement.[19] But the THI Receiver says FAS stopped paying them back in January 2013. As it stands, FAS owes approximately $3.5 million in legal fees under the January 5 agreement,[20] and as a consequence, the THI Receiver will be forced to pay those fees out of the limited assets of the THI receivership estate.

And none of that includes the costs the THI Receiver is incurring defending actions brought directly against him and the receivership estate. For instance, the Trustee sued the THI Receiver and his counsel for professional malpractice and breach of fiduciary duty in connection with the *Jackson* judgment.[21] The Trustee has also sued the THI Receiver for a declaratory judgment regarding her rights under a purported indemnification agreement between THI and THMI.[22] Faced with these mounting costs, the THI Receiver has reached a compromise with the Trustee and the Probate Estates.[23]

---

[18] The *Townsend* case was tried against THI only in July 2013 under a compromise that this Court approved. Doc. Nos. 1039 & 1080. Under that compromise, THMI agreed to a final judgment in an amount equal to a percentage of the judgment ultimately obtained against THI. Doc. No. 1080. The *Townsend* jury returned a $1.1 billion verdict against THI. That judgment is currently on appeal, and the district court reversed this Court's approval of the compromise and remanded it back to this Court so this Court can determine whether the Debtor and THMI should be treated as the same entity. Doc. No. 1291

[19] Doc. No. 1509-1 at ¶¶ 9.1, 11.1 & 17.

[20] Doc. No. 1490 at ¶ 7. According to the THI Receiver, the amount of unpaid fees owed to the THI Receiver and the law firms representing him was more than $3.7 million as of October 2013. Because he had a reasonable expectation that FAS would reimburse him for those fees, the THI Receiver sought permission from the receivership court to pay the law firms out of the receivership assets.

[21] *See Scharrer, et al. v. Fundamental Administrative Services, LLC*, Case No. 8:12-cv-01854-MSS-MAP, United States District Court, Middle District of Florida (Tampa Division). Those counts were dismissed by the district court because the Trustee failed to obtain leave of court to sue the THI Receiver under the *Barton* doctrine. The Trustee's request for leave under the *Barton* doctrine is currently pending before the receivership court.

[22] *See Scharrer, et al. v. Trans Healthcare, Inc.*, Adv. No. 8:13-ap-01007-MGW, United States Bankruptcy Court, Middle District of Florida (Tampa Division).

[23] Doc. Nos. 1490 & 1490-1.

**The Proposed Compromise**

There are six basic components to the proposed compromise. First, the THI Receiver agrees to pay the bankruptcy estate $750,000 out of the receivership estate's assets.[24] Second, the Trustee, Probate Estates, and THI Receiver each agree to withdraw all pleadings seeking affirmative relief against the other (whether in state court, district court, bankruptcy court, or the Maryland receivership court).[25] Third, the THI Receiver agrees to withdraw from the defense of the wrongful death cases on behalf of THI and THMI.[26] Fourth, the Trustee and Probate Estates agree to release the THI Receiver and the receivership estate—but not THI itself—from any and all claims they have.[27] Fifth, the THI Receiver agrees to waive any individual privileges he holds.[28] Sixth, this Court approves a bar order prohibiting any third parties—mainly the targets—from suing the THI Receiver, the receivership estate, and certain law firms retained by the THI Receiver for claims arising out of or related to this bankruptcy case and the negligence cases.[29] The Trustee, Probate Estates, and THI Receiver now seek approval of their proposed compromise, and five objections to it have been filed.[30]

---

[24] Doc. No. 1490-1 at ¶ 7(b).

[25] *Id.* at ¶¶ 3 & 4.

[26] *Id.* at ¶ 3(b).

[27] *Id.* at ¶ 6.

[28] *Id.* at ¶ 8. That does not include any privileges he holds with others that he is not entitled to waive unilaterally.

[29] *Id.* at ¶ 10.

[30] Doc. Nos. 1490, 1506, 1509, 1511, 1512 & 1513.

## Conclusions of Law[31]

*The Justice Oaks factors are likely met*

The Court should only approve the compromise if it is fair and equitable and in the best interests of the estate.[32] In considering whether that is the case, the Court looks to the *Justice Oaks* factors.[33] Those factors are: (i) the probability of success in the litigation between the settling parties; (ii) the difficulties, if any, to be encountered in collection; (iii) the complexity of the litigation involved and the expense, inconvenience, and delay necessarily attending it; and, (iv) the paramount interests of the creditors and a proper deference to their reasonable views.[34] If all that was at issue was the *Justice Oaks* factors, the Court would almost certainly approve the compromise.

In fact, none of the objecting parties have really argued that the proposed compromise does not satisfy *Justice Oaks*.[35] No one doubts that the litigation between the Trustee, Probate Estates, and THI is exceedingly complex, and even assuming the Trustee or Probate Estates prevail on their claims against THI's receivership estate, there is less than $2 million in assets available for all creditors. So a $750,000 recovery for the bankruptcy estate is significant. All of those reasons are presumably why the creditors in this case are uniformly in favor of the

---

[31] This Court has jurisdiction over this contested matter under 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

[32] *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1990).

[33] *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1549 (11th Cir.1990).

[34] *Id.*

[35] Doc. Nos. 1506, 1509, 1511, 1512 & 1513.

proposed compromise, which the Court must give deference to.[36] The real problem with the proposed compromise is the bar order.[37]

*The proposed bar order is not fair and equitable*

Bar orders, of course, are permissible under appropriate circumstances. As this Court explained, initially in *In re GunnAllen Financial*[38] and more recently in this case,[39] the Eleventh Circuit has expressly held that Bankruptcy Code § 105, which provides that the bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, is ample authority for entry of a bar order.[40] Bar orders are generally permitted where they are fair and equitable.[41] But, as the objecting parties correctly point out, the Court must consider whether the bar order is fair and equitable *to the parties being enjoined*.[42]

The objecting parties contend that a bar order cannot be fair and equitable—and a court must reject a request for one—where the enjoined parties do not receive any benefit under the proposed compromise. In support of that position, they point to the Eleventh Circuit's seminal decision in *In re Munford*, where the enjoined parties received a dollar-for-dollar offset of the

---

[36] The Court recognizes that Fundamental Clinical Consulting, LLC ("FCC") has filed a proof of claim in this case. FCC is an affiliate of FAS and presumably does not support the settlement. The Court is referring to creditors whose claims derive from negligence claims against THI or THMI.

[37] In fairness, FAS (and others) have objected that, irrespective of the bar order, the THI Receiver does not have the right to withdraw THI's defenses because he assigned the right to defend THI to FAS. In the Court's view, this issue is really part of whether the proposed bar order is fair and equitable.

[38] *In re GunnAllen Fin., Inc.*, 443 B.R. 908, 915 (Bankr. M.D. Fla. 2011).

[39] *In re Fundamental Long Term Care, Inc.*, 492 B.R. 571, 575-76 (Bankr. M.D. Fla. 2013).

[40] *Munford v. Munford, Inc. (In re Munford)*, 97 F.3d 449, 454-55 (11th Cir. 1996).

[41] *GunnAllen*, 443 B.R. at 915.

[42] *Id.*

claims against them to compensate them for losing their indemnification claims as a result of the bar order.[43] By contrast, the objecting parties point to this Court's previous decision in *GunnAllen*, where the Court rejected a proposed bar order because the enjoined parties' claims were being extinguished for less than 25 cents on the dollar.[44] The objecting parties say the bar order in this case is less fair and equitable than the one in *GunnAllen*—where the Court rejected the proposed bar order—because the enjoined parties here are not getting anything in return for giving up valuable indemnification, contract, and other claims against the THI Receiver.[45]

According to the objecting parties, the THI Receiver would be breaching his obligations under the January 5 agreement by withdrawing his defense of THI and THMI in the negligence cases. Withdrawal of THI's defense—indeed its appeal of *Townsend* alone—will result in more than $1 billion in liability against the company, which, in turn, will be used as a starting point to pursue the objecting parties. Absent the bar order, the objecting parties would be able to look to the THI Receiver in the event they are held liable for the billions of dollars of judgments against THI. Making matters worse, some of the objecting parties who would no longer be able to look to the THI Receiver because of the bar order, such as GECC and FAS, have already contributed more than a million dollars to THI's defense. Presumably recognizing that the objecting parties do not benefit at all from the compromise as initially proposed, and in an effort to shoehorn this case into *Munford*, the settling parties volunteered at the hearing on the compromise to modify

---

[43] *Munford*, 97 F.3d at 455-56.

[44] *GunnAllen*, 443 B.R. at 916.

[45] The objecting parties also fear they are losing certain privilege rights. The THI Receiver, however, claims he is only agreeing to waive any privileges that he can waive unilaterally. So the THI Receiver says he is not waiving any joint-defense or common-interest privileges.

10

their compromise to provide a mechanism for allowing the objecting parties (and other parties to the January 5 agreement) to offset any liability against them in this case.[46]

Under the proposed modification, any party that believes it has an indemnification claim against the THI Receiver can pursue that claim in this Court.[47] If the party prevails on its indemnification claim (including proving up the amount of its claim), then the party would be entitled to an offset against its liability in this case in an amount equal to whatever the THI Receiver would have distributed on the indemnification claim had it been asserted in the receivership proceeding.[48] The settling parties' proposed modification, however, does not solve the bar order's fatal defect.

In reality, the offset offered by the settling parties is illusory. By withdrawing the *Townsend* appeal alone, the THI Receiver would be exposing the objecting parties to up to $1 billion in liability. But the most the objecting parties could recover in the receivership estate is some pro rata share of approximately $2 million.[49] Even in a "best" case scenario, where the objecting parties were entitled to all $2 million of receivership assets but only found to be liable for the $200 million judgment in *Nunziata*, the objecting parties' claims would be extinguished for one percent of their value. And that is the "best" case scenario. Under a worst case scenario, the recovery could be two-tenths of one-percent of the value of their claims. For that reason, the

---

[46] Doc. No. 1520 at 22-24.

[47] *Id.* at 22.

[48] *Id.* at 22-23.

[49] According to the record, there is currently $5.4 million in assets in the receivership estate. But the settling parties have agreed that the THI Receiver can use those assets to pay $3.5 million in legal fees to the law firms that have been defending THI. Doc. Nos. 1490 at ¶ 7; 1490-1 at 7(a). That leaves, at most, $1.9 million in assets available for distribution.

proposed modification here is nothing like the dollar-for-dollar offset in *Munford*, and it still leaves the objecting parties worse off than the enjoined parties in *GunnAllen*.

To be sure, the settling parties would respond that the fact that the objecting parties' offset would only be pennies on the dollar has more to do with the fact that THI is in receivership than anything to do with the terms of the proposed compromise. And there is certainly some truth to that. The fact is the objecting parties' ability to recover from the THI Receiver and the receivership estate is limited by the fact that the receivership appears to have only about $2 million in assets available for distribution. But the fact is that the proposed compromise dramatically increases the objecting parties' exposure to liability, and it is avoiding exposure to liability (not the availability of a meaningful distribution on an indemnification claim) that is the real benefit the objecting parties are being deprived of.

After all, the objecting parties (and others) specifically bargained for the right to defend THI as an outer "firewall" to protect against their own liability to the Probate Estates. The objecting parties' liability is necessarily contingent on THI's liability. If THI is not liable, neither are the objecting parties. That is why the objecting parties bargained for the THI Receiver to assign the duty to defend THI to FAS and agreed to advance $1 million in defense costs. Under the proposed compromise, the THI Receiver has agreed to unilaterally—arguably in violation of the January 5 agreement—withdraw from THI's defenses, thereby destroying the outer "firewall" and ensuring that THI is liable for at least $1 billion.

The settling parties contend that their proposed compromise does not impact the objecting parties' ability to defend THI. They say—with varying degrees of certainty—that FAS (or the other objecting parties) will be able to take over THI's defense in state court. At one point, the Trustee likened the process to a compromise in a proceeding objecting to a discharge,

12

Case 8:11-bk-22258-MGW   Doc 1522   Filed 08/15/14   Page 13 of 16

where another creditor can step in and continue to pursue the discharge action after the creditor that originally filed the proceeding agrees to settle.[50] Later, she indicated FAS can take over the right to defend THI—in its own name—provided it can demonstrate an independent right to do so.[51] The THI Receiver says that nothing in the compromise prevents FAS from exercising its right under the January 5 agreement.[52] The Probate Estates, for their part, say they do not want "empty chair" verdicts.[53] But none of the settling parties were able—or, perhaps more accurately, willing—to unequivocally state that FAS would be able to continue to defend THI (including prosecuting any appeals).

     That is a significant point because at least two of the objecting parties indicated they would not oppose the proposed compromise so long as it was modified to provide that nothing in the compromise affected FAS's ability to defend THI and that the THI Receiver would not take any action impairing FAS's right to do so.[54] What became clear to the Court at the hearing is that the Probate Estates intend to vigorously oppose any effort by FAS to take over THI's defense in state court. At the hearing on the compromise, counsel for the Probate Estates specifically argued that he does not believe FAS has any standing to defend THI and that the THI Receiver lacks any authority to act in Florida.[55] And it is important to keep in mind that the Probate Estates have been successful in persuading courts not to permit counsel to appear on THMI's behalf in the past. In actuality, the compromise in that respect could be seen as somewhat of a gambit.

---

[50] Doc. No. 1520 at 27.

[51] *Id.* at 58.

[52] *Id.* at 64.

[53] *Id.* at 70.

[54] *Id.* at 38 & 53-54.

[55] *Id.* at 71.

13

The thrust of the settling parties' position is that FAS can defend THI so long as it is willing to come forward as the "real party-in-interest."[56] Why is that significant? In at least two of the wrongful death or negligence cases—*Townsend* and *Sasser*—the Probate Estates have argued that FAS (and the other targets) are liable for THI's underlying negligence because—by virtue of funding THI's defense—they are the real parties-in-interest. And in each of the negligence cases, a default as to liability—but not damages—has been entered. In other words, by forcing FAS (and others) to come forward as the real parties-in-interest, the Probate Estates have ensured that FAS (and others) will be liable for THI's alleged negligence—the only question is how much.

That is a classic "heads I win, tails you lose" scenario: either the THI Receiver can unilaterally collapse the outer firewall (i.e., defending THI against the negligence claims) by withdrawing THI's defenses, or the objecting parties can come forward as the real parties-in-interest and thereby confirm their liability—albeit not amount—for THI's alleged negligence, in which case the objecting parties lose the benefit of the outer firewall. The objecting parties specifically bargained for the right to defend THI at the liability stage. And they contributed more than a million dollars to do so. Any proposed settlement that eliminates the rights the objecting parties specifically bargained for without any benefit in return cannot be fair and equitable.

---

[56] Trustee's counsel argued at the compromise hearing that the compromise merely forces the real party-in-interest to come forward: "The question of who's going to go forward in State Court is important to [the Trustee] as well. And I think the answer is: The constitution answers the question. The *real party in interest* will step forward and defend those cases." *Id.* at 79 (emphasis added).

**Conclusion**

The proposed compromise at issue is expressly conditioned on this Court's approval of a bar order preventing the objecting parties from suing the THI Receiver for impairing their rights to defend THI in the negligence cases. That bar order, however, is not fair and equitable to the objecting parties because it deprives them of a valuable right without any meaningful benefit in return. For that reason, the Court will enter a separate order denying the settling parties' motion to compromise.

**DATED**: August 15, 2014

Michael G. Williamson
United States Bankruptcy Judge

Attorney Gabor Balassa is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

**Gabor Balassa, Esq.**
  **Kirkland & Ellis LLP**
**Jeffrey W. Warren, Esq.**
  **Bush Ross, P.A.**
*Counsel for GTCR Associates, VI; GTCR Fund VI, LP; GTCR Golder Rauner, LLC; GTCR Partners VI, LP; GTCR VI Executive Fund, LP; Edgar D. Jannotta, Jr.; THI Holdings, LLC*

**Carol A. Licko, Esq.**
**Hogan Lovells US LLP**
*Counsel for General Electric Capital Corporation*

**Marjorie Salem Hensel, Esq.**
**Ruel W. Smith, Esq.**
  **Hinshaw & Culbertson LLP**
*Counsel for Quintairos, Prieto, Wood, and Boyer, P.A.*

**Gregory M. McCoskey, Esq.**
  **Akerman Senterfitt**
*Counsel for Fundamental Administrative Services, LLC and THI of Baltimore, Inc.*

**James Sottile**
  **Zuckerman Spaeder, LLP**
**Paul V. Possinger, Esq.**
  **Proskauer Rose LLP**
*Counsel for Murray Forman, Leonard Grunstein, and Fundamental Long Term Care Holdings, LLC*

**Daniel J. Weiss, Esq.**
**Jenner & Block LLP**
*Counsel for Ventas, Inc. and Ventas Realty Limited Partnership*

**Steven M. Berman, Esq.**
**Seth P. Traub, Esq.**
**Shumaker, Loop &Kendrick, LLP**
*Counsel for the Chapter 7 Trustee*

**Harley E. Riedel, Esq.**
**Daniel R. Fogarty, Esq.**
  **Stichter Riedel Blain & Prosser, P.A.**
**Isaac R. Ruiz-Carus, Esq.**
  **Wilkes & McHugh PA**
*Counsel for the Estates of Juanita Jackson, Elvira Nunziata, Joseph Webb, Opal Lee Sasser, Arlene Townsend, and Francina Spivery-Jones*