ORDERED.

**Dated:  June 07, 2019**

Michael G. Williamson
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                              Case No. 8:11-bk-22258-MGW
                                                    Chapter 7
Fundamental Long Term Care, Inc.
and Trans Health Management, Inc.,

          Debtors.
_____/

## ORDER AND MEMORANDUM OPINION
## <u>ON PROBATE ESTATES' MOTION FOR RECUSAL</u>

THIS CASE came before the Court without a hearing to consider the Probate Estates' Motion for Recusal (the Recusal Motion); Shumaker, Loop & Kendrick, LLP and Steven M. Berman, Esquire's (together, Shumaker's) Opposition to the Recusal Motion; and the Probate Estates' Reply to Shumaker's Opposition.[1]

In the Recusal Motion, the Probate Estates seek the recusal of the undersigned Chief Judge Michael G. Williamson, and the Judge's law clerk,

---

[1] Docs. 2199, 2213, and 2214.

Edward Comey (Comey), pursuant to 28 U.S.C. § 455.  Among other grounds

for disqualification, § 455(b) provides for the recusal of a judge if the judge's

spouse has an interest that could be affected by the outcome of the case, or

if the judge has a personal bias or personal knowledge of disputed facts in

the case.  In this case, the Probate Estates assert (1) that Comey was

previously associated with Shumaker, (2) that Comey may have personal

knowledge of the relationship between a client of Shumaker's known as

Healthcare REIT, Inc. n/k/a Welltower, Inc. and other parties in the case;

(3) that Comey's spouse has a financial interest in Shumaker, and (4) that

Comey's conflict should be imputed to the Court, thereby necessitating the

Court's recusal from this case.

    Where a motion to recuse a judge is based on a law clerk's conflict,

the Eleventh Circuit Court of Appeals has generally held that the motion

should be denied if there has been no substantive participation by the law

clerk since the conflict arose, and if there is no showing of actual bias by the

judge.

    In this case, Comey has been screened from the case since the date

that the Probate Estates filed a Motion to Disqualify Shumaker (the

Disqualification Motion) and will not work on any future matters in the

case.  Additionally, the Probate Estates have not shown the presence of any

actual bias by the Court in the eight years of litigation since the case was

filed.  For these and other reasons set out in this Order, the Recusal Motion

should be granted to the extent that it seeks the isolation of Comey from the case and denied to the extent that it seeks the recusal of the undersigned Judge.

## I. Background

On December 5, 2011, the Probate Estate of Juanita Jackson filed an involuntary petition under Chapter 7 of the Bankruptcy Code against Fundamental Long Term Care, Inc. (the Debtor).[2]  No answer or response was filed to the involuntary petition, and an Order for Relief was entered on January 12, 2012.[3]  On January 23, 2012, Beth Ann Scharrer was appointed as the Trustee in the Chapter 7 case.

Prior to the filing of the involuntary petition, the Probate Estate of Juanita Jackson had obtained state court judgments against Trans Healthcare Inc. (THI) and Trans Health Management, Inc. (THMI) in the amount of $110 million.  THMI was a wholly owned subsidiary of the Debtor, and THI was the subsidiary's former parent.  In an effort to collect on those judgments, the Probate Estate of Juanita Jackson pursued state court proceedings supplemental against the Debtor and other new defendants, and obtained an amended judgment adding the Debtor to the original $110 million judgment.[4]

---

[2] Doc. 1.
[3] Doc. 6.
[4] Exhibit to Doc. 1.

The Probate Estate of Juanita Jackson, along with the Probate Estates of Elvira Nunziata, Joseph Webb, Arlene Anne Townsend, Opal Lee Sasser, and James Henry Jones (collectively, the Probate Estates) are the only creditors of the Debtor's bankruptcy estate, other than administrative claimants.  At least three of the Probate Estates held pre-petition judgments against THI and THMI in an aggregate amount that exceeded $1 billion.  In the Chapter 7 case, the Probate Estates and the Trustee pursued actions to collect the judgments from THI's former parent and shareholders, THI's primary secured lenders, and several other individuals and entities that allegedly received THMI's assets as part of an alleged "bust-out scheme."[5]

On October 28, 2015, almost four years after the filing of the involuntary petition, the Court entered an Order Granting Amended Motion for Interim Distribution to Holders of Allowed Claims (the Interim Distribution Order).[6]  In its preface, the Interim Distribution Order noted that the Court had recently approved three settlements totaling $20,450,000.00 with parties known as the Fundamental Parties, the THI Receiver, and Quintairos, Prieto, Wood & Boyer, and that the closing of the three settlements would yield at least $16,450,000.00 for the bankruptcy estate to pay administrative expenses and unsecured claims.  The Interim

---

[5] *In re Fundamental Long Term Care, Inc.*, 507 B.R. 359, 363 (Bankr. M.D. Fla. 2014).
[6] Doc. 1855.

Distribution Order provided for the payment of a number of administrative fees, claims, and expenses, and also provided (1) that the Trustee would distribute the balance of the Initial Settlement Proceeds to Wilkes & McHugh, P.A. (Wilkes) for distribution to the Probate Estates, and that (2) the distributions set forth in the Interim Distribution Order were intended to be final distributions, "consistent with the parties' settlement and the rapid closing of the bankruptcy case."[7]

Wilkes has served as the attorney for the Probate Estates throughout the bankruptcy case.[8] The Probate Estates each received almost $1 million from the Initial Settlement Proceeds. The Probate Estates also agreed with Wilkes that the unpaid balance of Wilkes' attorneys' fees totaling more than $7 million would be collected from any future settlements reached by the Trustee.[9] Wilkes has acknowledged that the Probate Estates will retain no more cash from the bankruptcy estate on account of their claims.[10]

## II. The Disqualification Motion

Early in the bankruptcy case, on June 5, 2012, the Court entered an Order approving the employment of Shumaker as special litigation counsel to the Trustee pursuant to § 327(a) of the Bankruptcy Code.[11] The

---

[7] Doc. 1855, ¶¶ 7, 12.

[8] *See, e.g.*, Doc. 2 and Adv. No. 8:13-ap-893-MGW.

[9] Doc. 2217; *Estate of Juanita Jackson, et al. v. Beth Ann Scharrer*, No. 8:17-cv-1545-T-23, pp. 3-4 (M.D. Fla. filed May 30, 2019).

[10] Doc. 2034, at 39-40.

[11] Doc. 165.

employment continued until December 22, 2015, when the Court entered an Order Granting Shumaker's Motion to Withdraw as Special Litigation Counsel.[12]

On June 4, 2018, the Probate Estates filed a Motion to Disqualify Shumaker as Counsel to the Chapter 7 Trustee Nunc Pro Tunc and for Disgorgement of Compensation (the Disqualification Motion).[13]

In the Disqualification Motion, the Probate Estates allege that the Debtor's case is a nursing home case, and that many of the recovery issues in the case involve a series of transactions that began in or around 2006. The Probate Estates further allege that entities known as Health Care REIT, Inc. n/k/a Welltower Inc. (HCN), Lyric Health Care, LLC and Lyric Healthcare Holdings, III (together, Lyric), and Home Quality Management Inc. (HQM) were owners or operators of the nursing homes at the time of the transactions, and that HCN, Lyric, and HQM were potential adversaries of the bankruptcy estate.  Finally, the Probate Estates allege that Shumaker had a number of pre-bankruptcy connections to HCN, Lyric, and HQM that were not disclosed in the bankruptcy case, and that the undisclosed connections disqualified Shumaker from representing the Trustee.[14]

---

[12] Doc. 1901.
[13] Doc. 2153.
[14] Doc. 2153, at 1, 4-5, 8, 26.

Based on these allegations, the Probate Estates seek the disqualification of Shumaker *nunc pro tunc* to the date of its employment, and the entry of an order requiring Shumaker to disgorge "any and all past and future compensation approved by this Court."[15]

On the same date that they filed the Disqualification Motion, the Probate Estates also filed a Motion to Withdraw the Reference on the Contested Matter Initiated by the Disqualification Motion.[16]  In the Motion to Withdraw the Reference, the Probate Estates asserted that Edward Comey (Comey), the Court's law clerk, is a former associate of Shumaker, and that Comey's prior association "may have unavoidably provided him with extrajudicial knowledge of the Shumaker practices" that are relevant to the Disqualification Motion.[17]  Because of the potential disqualifying interest of this Court, the Probate Estates contended that the Motion to Withdraw the Reference should be granted, and that the District Court should resolve the Disqualification Motion.[18]

On November 1, 2018, the District Court entered an Order denying the Motion to Withdraw the Reference, finding in part that the "bankruptcy judge enjoys the advantage of presiding for six years over litigation involving the estates, the trustee, and their counsel," and that the

---

[15] Doc. 2153, at 36.
[16] Doc. 2154.
[17] Doc. 2154, at 9.
[18] Doc. 2154, at 8.

bankruptcy judge's determination of the Disqualification Motion promotes the efficient use of judicial resources.[19]

### III. The Recusal Motion

On January 17, 2019, six weeks after the District Court declined to withdraw the reference, the Probate Estates filed the Recusal Motion.[20]  In the Recusal Motion, the Probate Estates seek the recusal of the undersigned Judge, and the screening of Comey as the undersigned Judge's law clerk.

The "Argument" section of the Recusal Motion contains two parts.

First, the Probate Estates assert that Comey should be screened from all work on the Disqualification Motion pursuant to 28 U.S.C. § 455(b)(4) "due to his spouse's financial interest in the fees at issue."[21]  Section 455(a) provides that a judge shall disqualify himself "in any proceeding in which his impartiality might reasonably be questioned."[22]  Section 455(b)(4) then provides:

> **§ 455.  Disqualification of justice, judge, or magistrate judge**
>
> . . .
>
> (b) He shall also disqualify himself in the following circumstances:
>
> . . .

---

[19] Doc. 2189.
[20] Doc. 2199.
[21] Doc. 2199, at 11.
[22] 28 U.S.C. § 455(a).

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.[23]

In this case, the Probate Estates assert that Comey is the spouse of Maria Ramos, who is "a partner at Shumaker since 2013 and now an equity partner."[24]  Consequently, the Probate Estates contend that Comey's spouse has a financial interest in the claims made in the Disqualification Motion, because her equity interest in Shumaker could be affected by the outcome of the request for disgorgement of past and future fees.  In this section of the Recusal Motion, the Probate Estates also contend that a law clerk's conflict is imputed to the Court when the law clerk is not properly screened, and that Comey's conflict therefore requires the recusal of the Court in this case.[25]

Second, the Probate Estates assert that Comey should have been screened from all previous participation in this case pursuant to 28 U.S.C. § 455(b)(1), because he "likely had personal knowledge" of facts involved in the case.[26]  Section 455(b)(1) provides:

**§ 455.  Disqualification of justice, judge, or magistrate judge**

. . .

---

[23] 28 U.S.C. § 455(b)(4).
[24] Doc. 2199, at 5.
[25] Doc. 2199, at 12.
[26] Doc. 2199, at 14.

(b) He [the judge] shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.[27]

In this case, the Probate Estates assert that Comey was employed by Shumaker between 2005 and 2010, at a time when Shumaker was representing HCN in connection with certain transactions that were at issue in this case.  Accordingly, the Probate Estates contend that Comey likely had knowledge of HCN's relationships with THI, THMI, and other adversaries of the bankruptcy estate, and should have been screened from the case while those relationships were litigated.  Additionally, the Probate Estates contend that Comey is likely to have knowledge of Shumaker's conflicts check system and other matters related to the Disqualification Motion.[28]  Finally, as with their claim under § 455(b)(4), the Probate Estates again contend that Comey's conflict under § 455(b)(1) is imputed to the Court, and that the imputed conflict requires the recusal of the undersigned Judge.[29]

---

[27] 28 U.S.C. § 455(b)(1).
[28] Doc. 2199, at 6, 12, 14.
[29] Doc. 2199, at 16.

## IV. Screening of Conflicted Law Clerk

The Recusal Motion is based on the connections between Comey and Shumaker, not on any alleged connections between the Court and any party or attorney involved in this case.

Where a law clerk has a conflict, the appropriate remedy is to screen the law clerk from the proceedings, not to disqualify the judge for whom the law clerk works.[30]

> [M]ost reasonable people would understand that judges are able to ferret out and set aside the potential biases of their law clerks.  Thus, even where a colorable conflict exists on the part of a law clerk, the proper remedy is sequestration of the law clerk from future involvement in the litigation, not recusal of the judge.  As the Eleventh Circuit eloquently stated: "Law clerk conflicts . . . are not necessarily judicial conflicts . . . ."[31]

"[T]he Eleventh Circuit has clearly established that when conflicts of interest arise between a judicial law clerk and an attorney, law firm, or party, 'it is the clerk, not the judge, who must be disqualified.'"[32]

Comey has been screened in this case.  He became employed as the Court's law clerk on March 21, 2011, before the filing of the involuntary petition that commenced this case.  But Comey has not worked on any aspect of the case since June 4, 2018, the date that the Probate Estates filed

---

[30] *Rittinger v. Healthy Alliance Insurance Company*, 2016 WL 827960, at *2 (E.D. Mo.).

[31] *United States v. Reggie*, 2014 WL 1664256, at *2 (M.D. La.)(quoting *Onishea v. Hopper*, 126 F.3d 1323, 1341 (11th Cir. 1997), *reversed on other grounds*, 171 F.3d 1289 (11th Cir. 1999)(citing *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1525 (11th Cir. 1988)).

[32] *Teitel v. Capell Howard, P.C.*, 2018 WL 525296, at *4 (M.D. Ala.)(quoting *Hunt v. American Bank & Trust Co. of Baton Rouge, La.*, 783 F.2d 1011, 1015-16 (11th Cir. 1986)).

the Disqualification Motion, and the date on which the Probate Estates raised Comey's conflict as an issue for the first time in the Motion to Withdraw the Reference.

The Disqualification Motion and the Recusal Motion are the only substantive matters currently pending in the case. Comey has not nor will he work on the Disqualification Motion or the Recusal Motion, or on any other future matters that may arise in the case.

## V. Recusal of Judge

In addition to seeking the sequestration of Comey, the Recusal Motion also seeks the recusal of the Court based on the imputation of Comey's conflict.[33] It is fundamental, however, that judges are presumed to be impartial, and that a party seeking the recusal of a judge bears the burden of proving the judge's bias.[34] Generally, a judge should participate in the cases that are assigned to him, unless there is a legitimate reason for recusal.[35]

If a motion to recuse a judge is based on a law clerk's potential conflict, and not on the judge's own conflict, the Eleventh Circuit Court of Appeals has consistently held that recusal is not justified if (1) there is no

---

[33] Doc. 2199, at 12, 16.
[34] *Doe v. Cabrera*, 134 F. Supp. 3d 439, 444 (D.C. 2015)(addressing a motion for recusal under § 455(a), which calls for disqualification in any proceeding in which the judge's impartiality "might reasonably be questioned.").
[35] *Ransom v. Marquez*, 2014 WL 5591076, at *2 (E.D. Cal.).

substantive participation by the law clerk, and (2) there is no showing of actual bias by the judge.[36]

In *In re Horne*,[37] for example, a claimant in a bankruptcy case asked for the judge's recusal based on a family relationship between the judge's courtroom deputy and an employee of the debtor's bankruptcy counsel.  The Eleventh Circuit found that recusal was not warranted, because there was no showing of a direct connection between the judge and the courtroom deputy's relative, and because the courtroom deputy had no decision-making role in the case.[38]  Similarly, in *In re Lawal*,[39] a party sought the recusal of a district judge for the reason that the judge's law clerk was formerly an attorney for the adverse party.  The Eleventh Circuit found that recusal was not required, because the moving party had not shown any personal bias on the part of the judge, and the isolation of the law clerk from the proceeding was a proper and sufficient remedy for the conflict.[40]

Here, the Probate Estates assert that Comey was formerly associated with Shumaker, and that Comey's spouse is currently an equity partner with Shumaker.  Shumaker is the Trustee's former litigation counsel, and is now the subject of the claim for disgorgement set forth in the

---

[36] *Hunt v. American Bank & Trust Co. of Baton Rouge, La.*, 783 F.2d 1011, 1016 (11th Cir. 1986)(The judge's recusal was not required, where the conflicted law clerks did not work on the case, and the moving party did not allege any actual bias by the judge.).
[37] *In re Horne*, 630 Fed. Appx. 908 (11th Cir. 2015).
[38] *In re Horne*, 630 Fed. Appx. at 910-11.
[39] *Lawal v. RTM*, 260 Fed. Appx. 149 (11th Cir. 2006).
[40] *Lawal v. RTM*, 260 Fed. Appx. at 152.

Disqualification Motion.  According to the Probate Estates, therefore, Comey has a disqualifying conflict that should be imputed to the Court, thereby requiring the Court's recusal from the case.

The Court's recusal is not warranted under the guidelines established by the Eleventh Circuit and the facts of the case.

First, the Court has presided over the case for eight years, and the Recusal Motion does not allege a single instance of actual bias in the Court's decisions or the Court's conduct of the proceedings.  Further, no such bias has been alleged throughout the course of the complex litigation that has been undertaken since the filing of the case in 2011.[41]  The request for the Court's recusal is based solely on the imputation of Comey's conflict, not on any actual prejudice by the Court.

Second, Comey has not worked on the case since June 4, 2018, the date that the Disqualification Motion was filed, and the date on which the potential conflict was raised for the first time in the Motion to Withdraw the Reference.  Further, Comey will not work on any future matters that may arise in the case.

---

[41] See, for example, *In re Fundamental Long Term Care, Inc.*, 527 B.R. 497, 501-09 (Bankr. M.D. Fla. 2015), in which the Court partially described the parties, claims, lawsuits, evidence, rulings, and appeals that have churned in the court system for more than ten years.

In the absence of any showing of actual bias by the Court, Comey's screening from the case is a proper and sufficient remedy for the potential conflict.

The remedy is sufficient, first because the Probate Estates did not show that Comey ever had personal knowledge of any disputed facts regarding the bankruptcy case. The Probate Estates allege only that Comey "likely" had personal knowledge of relationships between Shumaker's client (HCN) and other parties involved in the case, without providing any details regarding the substance or acquisition of the alleged knowledge.[42] Further, it is significant that HCN was never named as a defendant in any proceeding filed by the bankruptcy Trustee.[43] In other words, after exhaustive discovery to locate every potential target for recovery by the bankruptcy estate, the Chapter 7 Trustee never identified HCN as an adverse party in the case.[44]

Additionally, the sufficiency of Comey's screening as a remedy is shown by Shumaker's limited involvement in the case for the past three and one-half years. On December 10, 2015, Shumaker filed a Motion to Withdraw as Special Litigation Counsel, and the Motion was granted on

---

[42] Doc. 2199, at 14.
[43] *See, e.g.*, Doc. 2150, ¶ 31; Adv. No. 8:13-ap-893-MGW.
[44] *In re Fundamental Long Term Care, Inc.*, 512 B.R. 690, 707 (Bankr. M.D. Fla. 2014)("During the course of discovery, the Plaintiffs have received hundreds of thousands of pages of documents from the Defendants. . . . The Plaintiffs also had the opportunity to conduct 30 depositions . . . . The simple fact is that if the Plaintiffs had the ability to plead claims against Schron or claims against other Defendants . . . , they would have been able to do so by now.").

December 23, 2015.[45]  On January 11, 2016, shortly after Shumaker's withdrawal, Robert F. Elgidely and the law firm of Genovese Joblove & Battista, P.A. filed an Application for Employment as the Trustee's Special Counsel in Adv. Pro. 8:14-ap-486-MGW, and the Application was approved on February 9, 2016.[46]  Since December of 2015, therefore, the bankruptcy estate's active litigation has been handled by Elgidely and the Genovese law firm, and Shumaker's only current involvement in the case is its defense of the Disqualification Motion.

Finally, Comey's screening is sufficient as a remedy for the conflict, because Comey did not meaningfully participate in the case in any matters involving Shumaker since the time that his spouse became an equity partner in the firm.  Comey's spouse became an equity partner at Shumaker on January 1, 2018.[47]  Comey has been screened from the case since June 4, 2018.  The only activity on the bankruptcy case docket in the five-month period between January 1, 2018, and June 4, 2018, are transmittals of the record to the District Court for purposes of appeal, and Shumaker's filing of a Supplemental Disclosure on May 4, 2018, one month before the filing of the Disqualification Motion.[48]

---

[45] Docs. 1893, 1901.
[46] Docs. 1914, 1927.
[47] Doc. 2213, at 7.
[48] Docs. 2147, 2148, 2149, 2150, and 2151.

In summary, the Probate Estates are seeking the Court's recusal based on Comey's conflict.  In the Eleventh Circuit, the recusal of a judge because of his law clerk's conflict is not warranted if there is no substantive participation by the law clerk, and there is no actual bias by the judge.  In this case, recusal of the Court is not justified because Comey has been screened from the case since June 4, 2018, Comey's screening is a sufficient remedy for the conflict, and the Probate Estates have not alleged or shown any actual bias on the part of the Court.

### VI. Recusal for Strategic Purposes

Finally, in evaluating a request for recusal of a judge, Courts should consider whether there is an actual and reasonable doubt concerning the judge's impartiality.[49]  Congress has required that a judge's impartiality must *reasonably* be questioned before the judge recuses himself, "because there is a need to prevent parties from manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking."[50]

In this case, the timing and circumstances of the Recusal Motion suggest that the request may stem from a search for a different judge to consider the Disqualification Motion and related issues, rather than a concern for the Court's impartiality.

---

[49] See 28 U.S.C. § 455(a), which provides that a judge shall disqualify himself in any case in which his impartiality might reasonably be questioned.

[50] *Ezell v. Ros*, 2010 WL 2735599, at *1 (N.D. Fla.)(quoting *Carter v. West Publishing Co.*, 1999 WL 994997, at *2 (11th Cir.)(quoting *FDIC v. Sweeney*, 136 F.3d 216, 220 (1st Cir. 1998)).

The Probate Estates filed the Disqualification Motion and the Recusal Motion, but will retain no money from any settlements reached by the bankruptcy estate.  Wilkes, as attorney for the Probate Estates, has admitted that the Probate Estates "[a]re not going to get any cash" from future settlements generated by the Trustee.  Instead, the Probate Estates have contractually agreed to convey any distributions from the bankruptcy estate to their attorneys as payment of the attorneys' deferred fees and costs totaling more than $7 million.[51]

In the Disqualification Motion, the Probate Estates seek the disgorgement from Shumaker of "any and all past and future compensation approved by this Court."[52]  It appears, therefore, that the Probate Estates may seek to collect any funds that Shumaker is required to disgorge, solely in an effort to recoup their attorneys' deferred fees and costs.  To the extent that the disgorged funds are property of the bankruptcy estate, the Court possesses jurisdiction over the ultimate award of the disgorged funds.

The Probate Estates initially moved to withdraw the reference of the Disqualification Motion in order to have it decided by a District Court judge.[53]  The Recusal Motion was filed only after the District Court denied the Motion to Withdraw the Reference, in part because the bankruptcy

---

[51] Doc. 2217; *Estate of Juanita Jackson, et al. v. Beth Ann Scharrer*, No. 8:17-cv-1545-T-23, pp. 10, 13-14 (M.D. Fla. filed May 30, 2019).
[52] Doc. 2153, at 36.
[53] Doc. 2154.

judge "enjoys the advantage of presiding for six years over litigation involving the estates, the trustee, and their counsel."[54]

Under these circumstances, the Court has considered whether the Recusal Motion was filed because of reasonable doubts about its impartiality, or whether the Recusal Motion was filed for the strategic purpose of obtaining a different judge, and finds that recusal is not warranted.

## VII. Conclusion

In the Recusal Motion, the Probate Estates seek the recusal of the Court and Comey pursuant to 28 U.S.C. § 455. Comey was screened from the case since the date that the Probate Estates filed the Disqualification Motion and will not work on any future matters in the case. Additionally, the Probate Estates have not shown the presence of any actual bias by the Court in the eight years of litigation since the case was filed.

Accordingly, it is

**ORDERED**:

1. The Probate Estates' Motion for Recusal is granted to the extent that it seeks the isolation of Edward Comey from the case.

2. The Probate Estates' Motion for Recusal is denied to the extent that it seeks the recusal of the undersigned Chief Bankruptcy Judge Michael G. Williamson.

---

[54] Doc. 2189, at 3.

Attorney James L. Wilkes, II is directed to serve a copy of this Order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the Order.