ORDERED.

**Dated: March 30, 2021**

Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re: Case No. 8:11-bk-22258-MGW
Chapter 7

Fundamental Long Term Care, Inc.,

Debtor.
________________________________________/

**FINDINGS OF FACT AND CONCLUSIONS OF LAW SUPPORTING ORDERS AWARDING ATTORNEYS' FEES AND EXPENSES TO SPECIAL COUNSEL FOR CHAPTER 7 TRUSTEE**

On March 3, 2021, the Court entered two orders (the Fee Orders) awarding fees and expenses to two law firms for legal services that they provided to the Chapter 7 Trustee in litigation against Troutman Sanders, LLP (the Troutman Litigation). The Fee Orders are (1) an order approving the final fee application of Robert F. Elgidely, Esquire (Elgidely) and the Law Firm of Fox Rothschild LLP (the Fox Firm) as special counsel to the Chapter 7 Trustee;[1] and (2) an order approving the fee application of the

[1] Doc. No. 2303.

Law Firm of Genovese Joblove & Battista, P.A. (the Genovese Firm) as former special counsel to the Chapter 7 Trustee.[2] At the request of the Estates of Juanita Jackson, Elvira Nunziata, Joseph Webb, Arlene Anne Townsend, Opal Lee Sasser, and James Henry Jones (the Probate Estates),[3] the Court enters these findings of fact and conclusions of law in support of the Fee Orders.

The Court had approved the Trustee's applications to employ the Fox Firm and the Genovese Firm on a contingency fee basis under 11 U.S.C. § 328(a). Under § 328(a), the Court may not later alter the terms of an approved contingency fee agreement unless the terms "prove to have been improvident" in light of developments that could not have been anticipated at the time of the employment. Here, the Court finds that Elgidely, the Fox Firm, and the Genovese Firm diligently performed the services that they were employed to perform, and the Troutman Litigation was settled by Troutman's payment of $6.5 million to the Chapter 7 Trustee for the benefit of the estate. The Trustee's employment of Elgidely, the Fox Firm, and the Genovese Firm on a contingency fee basis was not improvident, and the Court approves their fee applications on the terms set out in the agreement.

**I. Background**

**A. The bankruptcy case and commencement of the Troutman Litigation**

[2] Doc. No. 2304.
[3] Doc. Nos. 2312, 2313.

On December 5, 2011, the Estate of Juanita Jackson filed an involuntary Chapter 7 petition against the Debtor, and an order for relief was entered on January 12, 2012. Beth Ann Scharrer was appointed as the Trustee of the Chapter 7 estate.

On June 2, 2014, the Trustee initiated the Troutman Litigation by filing a complaint and jury trial demand against Troutman Sanders, LLP and two individuals.[4] The original complaint contained five counts alleging negligence and fraud. On December 8, 2015, the Court entered a *Memorandum Opinion and Order on Motions to Dismiss* in which it dismissed Count I of the complaint with prejudice, and dismissed Counts II through V without prejudice.[5]

**B. Employment of Elgidely and the Genovese Firm**

On January 11, 2016, the Trustee filed an application to employ Elgidely and the Genovese Firm as special counsel to represent her in the Troutman Litigation.[6] In the application, the Trustee represented (1) that Elgidely would be primarily responsible for handling the prosecution of the Troutman Litigation, (2) that the Genovese Firm would first enter a Phase I negotiation phase and later, if necessary, a Phase 2 continued litigation phase, and (3) that the Genovese Firm would charge "on a contingency fee basis equivalent to 20% of the gross recovery in Phase I and equivalent to

[4] Adv. Pro. No. 8:14-ap-00486-MGW, Doc. No. 1.
[5] Adv. Pro. No. 8:14-ap-00486-MGW, Doc. No. 62.
[6] Doc. No. 1914.

40% (plus an additional five percent (5%) in the event of an appeal) of the gross recovery in Phase 2 whether through collection of a judgment, settlement or otherwise."

Troutman filed a limited objection to the application,[7] and the Probate Estates filed an objection stating that they "have no objection to the Trustee's employment of the Genovese firm to pursue the claim of the bankruptcy estates, and the payment of reasonable compensation to the firm by Scharrer – solely from any recovery from the Bankruptcy Estate's claims against Troutman – in order to pursue actions against Troutman, as long as the terms of this Court's Settlement Order [among the Probate Estates, the Trustee, and Estate Professionals] remain in effect."[8]

On January 14, 2016, the Court conducted a hearing on the application. At the hearing, the Probate Estates supported the employment of Elgidely and the Genovese Firm and the payment of reasonable compensation for their services, and were concerned primarily about the impact of the employment on their independent claims against Troutman after the bankruptcy case was closed.[9]

On February 9, 2016, the Court entered an order approving the Trustee's application to employ Elgidely and the Genovese Firm (the

[7] Doc. No. 1916.
[8] Doc. No. 1917.
[9] Doc. No. 1921, Transcript of January 14, 2016 hearing, pp. 13-17.

Genovese Employment Order).[10] After noting that the "Probate Estates, who would benefit from any recovery in the Troutman Adversary, supported the employment application," the Genovese Employment Order provides:

> Before this case is closed, Elgidely and GJB shall be compensated for their representation of the Trustee in the Troutman Adversary on a contingency fee basis equivalent to: (a) 20% of the gross recovery obtained during the Negotiation Phase; and (b) *40% of the gross recovery obtained, whether by settlement, judgment collection, or otherwise, during the Litigation Phase (plus an additional 5% in the event of an appeal). Payment of compensation before the case is closed shall be subject to Bankruptcy Code § 328(a).* Once the Liquidating Trust is established, Elgidely's and GJB's compensation shall be subject to the agreement of the Trustee and the Probate Estates.[11]

No party filed a motion to reconsider the Genovese Employment Order. In addition, the bankruptcy case has not been closed, and no Liquidating Trust was established in this case.[12]

**C. The Troutman Litigation**

On May 6, 2016, the Genovese Firm filed an amended complaint and demand for jury trial in the Troutman Litigation.[13] The amended complaint contained four counts asserting claims for civil conspiracy, aiding and abetting fraud, aiding and abetting conversion, and aiding and abetting breach of fiduciary duties. During the course of the litigation, Troutman filed a motion to dismiss the amended complaint, an answer with 29

---

[10] Doc. No. 1927 (emphasis added).
[11] Doc. No. 1927.
[12] See Doc. Nos. 1964, 2228.
[13] Adv. Pro. No. 8:14-ap-00486-MGW, Doc. No. 85.

affirmative defenses, and a motion for partial summary judgment.[14] On November 7, 2016, the Court entered an *Agreed Order Establishing Pretrial Procedures* and set dates for the parties to complete discovery and file summary judgment motions.[15]

On December 13, 2016, the Trustee and Troutman entered into a *Settlement Agreement to Resolve, Release, and Bar Claims*, under which Troutman agreed to pay the sum of $6.5 million to the Trustee.[16] On December 16, 2016, the Trustee filed a motion to approve the settlement under Fed. R. Bankr. P. 9019.[17] The Probate Estates objected to the settlement,[18] and the parties engaged in extensive discovery on the Trustee's motion to approve the settlement and the Probate Estates' objection.[19] On May 1, 2017, the Court conducted a trial on the motion and objection,[20] and on May 17, 2017, the Court entered an *Order Granting Trustee's Verified Motion to Approve Compromise of Controversy with Troutman Sanders LLP* (the Troutman Settlement Order).[21]

On May 31, 2017, the Probate Estates filed a notice of appeal of the Troutman Settlement Order.[22] On May 30, 2019, the District Court

[14] *Id.* at 91, 102, 103.
[15] *Id.* at 112.
[16] Doc. No. 1999, p. 24.
[17] Doc. No. 1999.
[18] Doc. Nos. 2006, 2107.
[19] *See*, for example, Doc. Nos. 2009, 2016, 2028, 2031-2022, 2040, 2062, 2078, 2080, 2083.
[20] Doc. No. 2112.
[21] Doc. No. 2127.
[22] Doc. No. 212.

remanded the matter to the Bankruptcy Court to determine the limited issue of "whether the Trustee's settling with Troutman Sanders without approval from the Probate Estates violated the Settlement Term Sheet" between the Trustee and the Probate Estates.[23] On August 19, 2019, the Court entered a Memorandum Opinion and Order on the remanded matter, and determined that the Trustee's settlement with Troutman did not violate the Settlement Term Sheet entered by the Trustee and the Probate Estates.[24]

On August 16, 2019, the Probate Estates filed a second notice of appeal related to the Troutman Settlement Order.[25] On September 30, 2020, the District Court entered an order affirming the Troutman Settlement Order,[26] and later entered an order denying the Probate Estates' motion for rehearing of the District Court order.

On February 19, 2021, Troutman paid the settlement amount of $6.5 million to the Trustee.[27]

**D. Employment of Elgidely and the Fox Firm**

In October 2019, during the pendency of the Probate Estates' second appeal in the Troutman Litigation, Elgidely left the Genovese Firm and began employment with the Fox Firm. On November 27, 2019, the Trustee

[23] Doc. No. 2217.
[24] Doc. No. 2228.
[25] Doc. No. 2231.
[26] Doc. Nos. 2295, 2296.
[27] See Doc. No. 2298, ¶ 51.

filed an application to employ Elgidely and the Fox Firm to represent her in her defense of the Probate Estates' second appeal of the Troutman Settlement Order.[28]

The Probate Estates filed an objection to the application alleging a number of disqualifying conflicts of interest between the Fox Firm and the bankruptcy estate.[29] The Trustee filed a response to the objection,[30] and the Court conducted a hearing on January 27, 2020.[31]

On April 3, 2020, the Court entered a Memorandum Opinion and Order finding no conflicts of interest between the Fox Firm and the bankruptcy estates, overruling the Probate Estates' objection, and approving the Trustee's application to employ Elgidely and the Fox Firm as special counsel in the Troutman Litigation (the Fox Employment Order).[32] In addition, the Fox Employment Order provides:

> The contingency fee previously approved by the Court will be allocated between Fox Rothschild and the Genovese Firm in a manner agreed upon by those firms, or, as may be determined by this Court at the appropriate time if an agreement cannot be reached. The aggregate contingency fee payable to Fox Rothschild and the Genovese Firm will not exceed the contingency fee previously approved by this Court.[33]

---

[28] Doc. No. 2258.
[29] Doc. Nos. 2259, 2260.
[30] Doc. No. 2266.
[31] Doc. No. 2267.
[32] Doc. No. 2275.
[33] Doc. No. 2275, p. 17.

The Probate Estates filed a notice of appeal of the Fox Employment Order.[34] On September 21, 2020, the District Court entered an order dismissing the appeal.[35]

**E. The Genovese Firm's fee application and order**

On February 22, 2021, the Genovese Firm filed an application for an award of the agreed allocation of the contingency fee earned as former special counsel to the Trustee in the Troutman Litigation.[36] The Genovese Firm asserts that the application covers the period from January 11, 2016, to November 13, 2019, that the Trustee has funds on hand in the amount of $6,530,211.42, that the total amount of the approved contingency fee earned for prosecuting the Troutman Litigation was $2,925,000.00, and that the Genovese Firm's agreed allocation of the total contingency fee is $2,193,750.00. In addition, the Genovese Firm seeks reimbursement of expenses in the amount of $42,676.04 and attached a summary of the requested expenses. Consequently, the Genovese Firm seeks a total award of $2,236,426.04 through the application.

On March 3, 2021, the Court entered an order approving the application and awarded the Genovese Firm "$2,193,750.00 in compensation as its portion of the Total Contingency Fee on a final basis and

[34] Doc. No. 2283.
[35] Doc. No. 2294.
[36] Doc. No. 2300.

reimbursement of its expenses totaling $42,676.04, for a total award of $2,236,426.04."[37]

**F. The Fox Firm's fee application and order**

On February 22, 2021, the Fox Firm filed a final application for an award of compensation as special counsel to the Trustee.[38] The Fox Firm asserts that the application covers the period from October 2019 to January 2021, that the Trustee has funds on hand in the amount of $6,530,211.42, that the total contingency fee for prosecuting the Troutman Litigation is $2,925,00.00, and that the Fox Firm's agreed allocation of the total contingency fee is $731,250.00. In addition, the Fox Firm seeks reimbursement of expenses in the amount of $2,764.01 and attached a summary of expenses and disbursements. Consequently, the Fox Firm seeks a total award of $734,014.01 through the application.

On March 3, 2021, the Court entered an order approving the application and awarding the Fox Firm "$731,250.00 as its portion of the Contingency Fee on a final basis and reimbursement of its expenses totaling $2,764.01, for a total award of $734,014.01."[39]

The order approving the Fox Firm's fees and expenses provides that "specific findings and a statement of the facts and considerations supporting each of these conclusions have been omitted in the interest of

[37] Doc. No. 2304.
[38] Doc. No. 2298.
[39] Doc. No. 2303.

brevity but will be prepared and filed at the request of any party if received by this Court within ten (10) days after the entry of this Order."[40] The Probate Estates made a timely request.[41]

**II. Analysis**

**A. 11 U.S.C. § 328(a)**

Section 328(a) of the Bankruptcy Code expressly authorizes a trustee's employment of a professional on a contingent fee basis. Specifically, the section provides that a trustee, with the court's approval, may employ a professional person under § 327 "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, *or on a contingent fee basis*." The section also provides that, after the professional's employment is concluded, the court may allow a different compensation than the terms of compensation approved in the employment agreement if such terms and conditions "prove to have been improvident in light of developments not capable of being anticipated at the time" that they were fixed.[42]

Section 328 applies to a professional's fees in cases where the bankruptcy court approves a particular rate or means of payment for the professional at the time of his employment. The standard for considering a professional's fees under § 328 is distinct from the standard for considering

[40] Doc. No. 2303, p. 5.
[41] Doc. Nos. 2312, 2313.
[42] 11 U.S.C. § 328(a) (emphasis added).

fees under 11 U.S.C. § 330, which authorizes the award of "reasonable" compensation. Section 330 applies when the court did not pre-approve a particular rate or terms of compensation for the professional.[43]

Generally, once the terms of an attorney's employment are approved under § 328, they cannot be challenged as "unreasonable" under § 330 of the Bankruptcy Code.[44]

> If employment terms and conditions are approved by a bankruptcy court under § 328(a), then the professional's compensation is governed by those terms and conditions, rather than the general "reasonable compensation for services rendered" language of § 330(a)(1)(A). . . . Case law makes clear that the "subject to" qualification in § 330(a)(1) means that the previously approved § 328(a) terms and conditions control the professional's compensation.[45]

In other words, after a court pre-approves the terms of employment under § 328(a), "its power to amend those terms is severely constrained."[46] The terms can only be altered if they prove to have been improvident in light of unanticipated developments, and a "finding of improvidence pursuant to § 328 is a difficult determination to make."[47] For example, a contingency fee agreement is not improvident even if the fees appear excessive in hindsight at the end of the case, or even if an unexpected event such as a settlement or sale affects the rate claimed by the professional, as

---

[43] *In re Clark*, 2014 WL 10250672, at *2 (Bankr. N.D. Fla. July 28, 2014).
[44] *In re John Q. Hammons*, 600 B.R. 436, 449 (Bankr. D. Kan. 2019).
[45] *In re Hungry Horse, LLC*, 574 B.R. 740, 746 (Bankr. D. N. Mex. 2017).
[46] *In re Smart World Technologies, LLC*, 552 F.3d 228, 232 (2d Cir. 2009).
[47] *In re XO Communications, Inc.*, 323 B.R. 330, 339 (Bankr. S.D.N.Y. 2005).

long as the event was *capable* of anticipation at the time the fee agreement was pre-approved.[48]

**B. The Trustee's contingent fee agreement with the Genovese Firm and the Fox Firm was not improvident.**

The Trustee's contingent fee agreement with Elgidely, the Genovese Firm, and the Fox Firm was pre-approved by the Court under § 328(a) in the orders approving their employment. Her application to employ the Genovese Firm set out the terms of the contingent fee arrangement in detail, her application to employ the Fox Firm incorporated the fee arrangement, and the orders approving the Trustee's employment of the Genovese Firm and the Fox Firm clearly approved the terms of the contingent fee agreement.[49]

The Court will not alter the terms of the Trustee's contingent fee agreement with Elgidely, the Genovese Firm, and the Fox Firm because the terms of the arrangement have not proved to be improvident by subsequent developments in the case.

First, Elgidely, the Genovese Firm, and the Fox Firm successfully completed the work that they were retained to perform. They were employed to prosecute the Troutman Litigation after the Court had dismissed the original complaint. The record of the Troutman Litigation

---

[48] *In re John Q. Hammons*, 600 B.R. at 450-51(citing *In re ASARCO*, 702 F.3d 250, 259 (5th Cir. 2012) and *In re Smart World Technologies*, 383 B.R. 869, 877 (S.D.N.Y. 2008, aff'd, 552 F.3d 228 (2d Cir. 2009)).
[49] *In re Clark*, 2014 WL 10250672, at *3.

shows that, among other services, Elgidely and the Genovese Firm or the Fox Firm (1) filed an amended complaint, (2) entered a settlement agreement with Troutman, (3) successfully defended the settlement in contested evidentiary proceedings in the Bankruptcy Court, and (4) further successfully defended the settlement in two appeals to the District Court.

Second, the settlement in the Troutman Litigation produced a significant benefit to the bankruptcy estate that the estate would not otherwise have received. The settlement provided for Troutman to pay $6.5 million to the Trustee, and the settlement amount has in fact been paid. After disbursement of the Trustee's fees and costs, the settlement yielded more than $2.7 million to the estate for distribution to creditors under the Bankruptcy Code.[50]

Finally, no unexpected events occurred in this case that rendered the contingent fee agreement improvident. Settlement of the Troutman Litigation clearly was capable of anticipation at the time that the Trustee employed Elgidely and the law firms, and the services of Elgidely and the law firms led directly to the estate's receipt of the settlement funds.[51]

---

[50] See Doc. No. 2011, pp. 9-10; Doc. No. 2108, Sworn Direct Testimony of Chapter 7 Trustee, p. 1, ¶ 4.

[51] See *In re John Q. Hammons*, 600 B.R. at 450-51 (Developments such as a new title insurance issue, an alleged breach of professional duties, and an alleged lack of a "causal connection" between the professional's work and the disposition of the debtor's assets were not events that rendered the professional's fees improvident.)

In conclusion, the Court finds that the Trustee's contingent fee agreement with Elgidely, the Genovese Firm, and the Fox Firm was approved in advance under § 328(a). The Court will approve the compensation and expenses requested by Elgidely, the Genovese Firm, and the Fox Firm under that section because the Trustee and the attorneys that she employed diligently fulfilled the duties that they were retained to perform, there have been no developments not capable of anticipation that make the agreement improvident, and the results of the services provided by Elgidely, the Genovese Firm, and the Fox Firm were extraordinary and beneficial to the estate.[52]

Accordingly, it is

**ORDERED** that contingency fees and expenses are awarded to Robert F. Elgidely, Esquire, Fox Rothschild LLP, and Genovese Joblove & Battista, P.A. in accordance with (1) the *Order Approving Final Application for Allowance and Payment of Compensation and Reimbursement of Expenses to Robert F. Elidely, Esq. and the Law Firm of Fox Rothschild LLP, as Special Counsel to Chapter 7 Trustee Beth Ann Scharrer* (Doc. No. 2303), and (2) the *Order Approving Application for Award of Compensation and Approval and Payment of Agreed Allocation of Earned Contingency Fee and Reimbursement of Expenses to the Law Firm of Genovese Joblove &*

[52] *In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327, 345 (Bankr. D. Md. 2000).

*Battista, P.A., as Former Special Litigation Counsel to Chapter 7 Trustee for Beth Ann Scharrer* (Doc. No. 2304).

| Attorney Robert F. Elgidely is directed to serve a copy of these Findings of Fact and Conclusions of Law on interested parties who do not receive service by CM/ECF and file a proof of service within 3 days of entry. |
|---|

Robert F. Elgidely, Esq.
Fox Rothschild LLP
*Special Counsel to Chapter 7 Trustee*

John H. Genovese, Esq.
Genovese Joblove & Battista, P.A.
*Former Special Counsel to Chapter 7 Trustee*

James L. Wilkes, II, Esq.
Wilkes & Associates, P.A.
*Counsel for the Probate Estates*