UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                          CASE NO. 8:11-bk-22258-MGW

FUNDAMENTAL LONG TERM CARE, INC.                CHAPTER 7
and TRANS HEALTH MANAGEMENT, INC.,              (Substantively Consolidated)

                              Debtors.

_____/

**REPLY TO PROBATE ESTATES' PRELIMINARY
RESPONSE AND OBJECTION TO FINAL APPLICATION
FOR ALLOWANCE AND PAYMENT OF HOURLY COMPENSATION
TO THE LAW FIRM OF GENOVESE JOBLOVE & BATTISTA, P.A. AS
FORMER SPECIAL LITIGATION COUNSEL FOR THE CHAPTER 7 TRUSTEE**

The law firm of Genovese Joblove & Battista, P.A. ("GJB"), hereby files its opposition to the *Probate Estates' Preliminary Response and Objection to Final Application for Allowance and Payment of Hourly Compensation to the Law Firm of Genovese Joblove & Battista, P.A. as Former Special Litigation Counsel for the Chapter 7 Trustee* (Doc. No. 2328), and states as follows:

**I.      PROCEDURAL HISTORY**

1.      On June 2, 2014, Beth Ann Scharrer, as Chapter 7 Trustee of Fundamental Long Term Care, Inc. estate ("Trustee"), initiated an adversary proceeding against Troutman Sanders, LLP ("Troutman") and various other named Defendants captioned *Beth Ann Scharrer, Chapter 7 Trustee of Fundamental Long Term Care, Inc. v. Troutman Sanders, LLP, et al.,* No. 8:14-ap-00486-MGW (Bank. M.D. Fla) ("Adversary Proceeding").

2.      On January 11, 2016, the Trustee filed the *Application to Employ Robert F. Elgidely and the law firm of Genovese Joblove & Battista, P.A. ("GJB") as Special Counsel for the Troutman Adversary*, seeking to appoint GJB as Special Litigation Counsel for the Trustee (Main

Case, Doc. No. 1914) ("Employment Application"). The Trustee engaged GJB to pursue the claims against Troutman in the Adversary Proceeding after Steven M. Berman, then of Shumaker, Loop & Kendrick, LLP withdrew from the case.

3.      On December 13, 2016, less than one year after GJB's appointment, the Trustee and Troutman entered into a *Settlement Agreement To Resolve, Release, And Bar Claims* (Main Case, Doc. No. 1999, pp. 24-39) (the "Troutman Settlement"), under which Troutman agreed to the pay $6.5 million to the estate. On December 16, 2016, GJB filed the *Trustee's Verified Motion to Approve Compromise of Controversy with Troutman Sanders LLP in Adversary Proceeding Number 8:14-ap-00486-MGW and Request for Entry of Bar Order* (Doc. No. 1999) ("Troutman Settlement Motion"). In addition to the $6.5 million settlement payment to the estate, the Settlement Motion sought approval of a novel provision in which Troutman agreed to pay an amount up to $200,000 of the reasonable hourly fees and expenses incurred by GJB in connection with the prosecution of the Troutman Settlement Motion and any related appeals.  (*Id.* at 33-34).

4.      On May 1, 2017, this Court conducted a trial on the Troutman Settlement Motion, and on May 17, 2017, entered its *Order Granting Trustee's Verified Motion to Approve Compromise of Controversy with Troutman Sanders, LLP.* (Main Case, Doc. No. 2127) ("Troutman Settlement Order").

5.      The Probate Estates immediately appealed the Troutman Settlement Order. ("Troutman Appeal I"). The three issues on appeal concerned (i) whether the Troutman Settlement satisfied the *Justice Oaks* standard, (ii) whether the Troutman Settlement violated a prior agreement between the Probate Estates and the Trustee, and (iii) whether the Probate Estates had standing to object to the Settlement Motion.

6.      The Troutman Appeal I was difficult and time-consuming, requiring substantial effort from GJB during the two years in which the appeal was pending. The Probate Estates'

Designation of Contents for Inclusion in Record on Appeal *alone* comprised 198 pages (Main Case, Doc. No. 2131) related to multiple adversary proceedings and contested matters and appeals. In addition to reviewing the voluminous appellate record, GJB spent countless hours analyzing the Probate Estates' arguments, conducting legal research, and preparing the Trustee's brief on each issue.

7.      Two years later, on May 30, 2019, District Court reversed the Troutman Settlement Order with respect to the Probate Estates' standing and remanded the matter to this Court to determine the limited issue of whether the Troutman Settlement Motion and the Troutman Settlement Order violated a separate agreement with the Probate Estates. (Main Case, Doc. No. 2217). The Troutman Settlement, however, remained unchanged. (*Id.*)

8.      On remand, this Court determined that the Troutman Settlement did not violate the separate agreement and entered its *Memorandum Opinion and Order on Remand of Order Granting Trustee's Verified Motion to Approve Compromise of Controversy with Troutman Sanders, LLP.* (Main Case, Doc. No. 2228) ("Remand Order"). Shortly thereafter, on August 16, 2019, the Probate Estates filed a second Notice of Appeal of the Remand Order and the Troutman Settlement Order. (Main Case, Doc. No. 2231) ("Troutman Appeal II").

9.      In the Troutman Appeal II styled *Jackson, et al. v. Scharrer*, No. 8:19-cv-02082-SDM (M.D. Fla.), the District Court affirmed the Troutman Settlement Order in all respects (Main Case, Docs. 2295-2296) ("Troutman Appeal II Order"), entered judgment in favor of the Trustee (*Id.*), and on December 18, 2020, denied the Probate Estates' untimely Motion for Rehearing of the Troutman Appeal II Order  (Troutman Appeal II, Doc. No. 44). On January 20, 2021, the Settlement Order became final.

10.      On February 19, 2021, Troutman paid the settlement amount of $6.5 million to the Trustee. On February 22, 2021, GJB filed its *Application For Approval And Payment Of Agreed*

*Allocation Of Earned Contingency Fee And Reimbursement Of Expenses To The Law Firm Of Genovese Joblove & Battista, P.A., As Former Special Litigation Counsel To Chapter 7 Trustee For Beth Ann Scharrer* (Main Case, Doc. No. 2300), which was approved by this Court on March 3, 2021 (Main Case, Doc. No. 2304) (the "Contingency Fee Order"). The Probate Estates then requested that the Court issue findings of fact and conclusions of law in connection with the Contingency Fee Order. In connection therewith, the Court entered lengthy and detailed findings of fact and conclusions of law in support of the award and allocation of a contingency fee to GJB and Fox Rothschild (Main Case, Doc. No. 2320). Among other findings made by the Court, the Court found that the services provided by GJB were "extraordinary and beneficial to the estate." (*Id.* at p. 15). The Probate Estates then sought reconsideration of the Contingency Fee Order, which this Court denied. (Main Case, Doc. No. 2321).

11.    Not surprisingly, the Probate Estates appealed the Contingency Fee Order, together with the Court's order awarding Fox Rothschild its allocated contingency fee. (Main Case, Doc. No. 2316).

12.    On March 11, 2021, GJB filed its *Final Application for Allowance and Payment of Hourly Compensation to the Law Firm of Genovese Joblove & Battista, P.A. as Former Special Litigation Counsel for the Chapter 7 Trustee* (Main Case, Doc. No. 2311) (the "Application"), seeking an award of not more than $200,000.00 in hourly fees pursuant to the Troutman Settlement Motion and Order. On April 1, 2021, the Probate Estates filed their *Preliminary Response and Objection to Final Application For Allowance and Payment of Hourly Compensation to the Law Firm of Genovese Joblove & Battista, P.A., as Former Special Litigation Counsel for the Chapter 7 Trustee.* (Main Case, Doc. No. 2328) (the "Objection").

## II.    ARGUMENT

The Probate Estates efforts at obstruction have now reached their nadir. They object to the

payment of $200,000 to be funded pursuant to the Troutman Settlement Order, which has been appealed twice, in the Troutman Appeal I and the Troutman Appeal II. All aspects of the Troutman Settlement, as reflected in the Remand Order, have been affirmed by the District Court in the Troutman Appeal II Order.

The Troutman Appeal II Order necessarily included the reimbursement of up to $200,000 in hourly fees as additional consideration to the bankruptcy estate subject to the provision that GJB "shall apply to the Court for the allowance and payment of the reasonable hourly fees and costs [incurred] in connection with the prosecution of the Motion to Approve this Settlement Agreement and any appeals of the 9019 Order." (Main Case, Doc. No. 1969 pp. 33-34).

The Probate Estates now raise a hodge-podge of arguments suggesting that GJB has a conflict of interest because it is effectively representing both the Trustee and Troutman. Of course, the Probate Estates ignore entirely the triangular nature of the relationship. Troutman (which has not objected to the Application) is obligated contractually and by Court order to reimburse the bankruptcy estate for fees awarded by the Court after the Application. GJB has no obligation to Troutman, nor does Troutman have an obligation to GJB. Troutman's obligation is to follow court orders and to pay the estate up to $200,000 in hourly fees to the extent awarded by the Court.

Aside from being ridiculous on its face, the Probate Estates have lost the ability to challenge the entitlement of the Trustee's professionals to seek an award and payment of hourly fees and the obligation of Troutman to pay such hourly fees by virtue of the Troutman Appeal I Order and Judgment. *See This That & The Other Gift & Tobacco, Inc. v. Cobb Cty.,* 439 F.3d 1275, 1283 (11th Cir. 2006) ("[T]he findings of fact and conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal[,] . . . bar[ring] relitigation of issues that were decided either explicitly or by necessary implication." (internal quotation marks and citation omitted)); *United States v. Escobar-Urrego*, 110 F.3d 1556,

5

1560 (11th Cir. 1997) ("a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time"). Thus, even if the Probate Estates did not waive this new argument, they lost it when their appeal from the Troutman Appeal II Order was dismissed.

The only issue now to be decided by this Court is whether GJB has demonstrated that it has incurred not less than $200,000 in reimbursable hourly fees under the standards set forth in *Johnson v. Georgia Highway Expenses, Inc.*, 488 F.2d 784 (5th Cir. 1979). S*ee also Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

Having visited the merits of the Troutman Settlement twice, this Court is well familiar with the difficulty that GJB faced in achieving both the Troutman Settlement and succeeding in the two appeals, which bear directly on the factors enumerated in *Johnson v. Georgia Highway Express, supra*, specifically the "results obtained" factor.  The only material issue to be considered is whether GJB has demonstrated that it has provided valuable services, at reasonable hourly rates, to the estate in an amount not less than $200,000.[1]

GJB's Application, as reflected in Exhibit 1 detailing hours expended by GJB, covers only the period from the time of the Troutman Settlement Motion through the date of the departure of Robert F. Elgidely from GJB to become a partner at Fox Rothschild. Fox Rothschild does not seek

---

[1] The Probates Estates, in an effort to question the reasonableness of GJB's fees have suggested that the fees are not reasonable because the outcome of the Troutman litigation and the appeals was "detrimental to the bankruptcy estate and the Probate Estates, as it did not adequately fund the bankruptcy estate to adequately compensate the Probate Estates . . . ." (Doc. No. 2328). The irony of this argument should not be lost on the Court. The District Court in the Remand Order noted that "the six probate estate representatives combined received less than $6 million" from a $23.7 million in related litigation recovery by the Trustee and the Probate Estates. The Probate Estates assert that they are entitled to deferred fees and costs of approximately $7.4 million. The Trustee has projected that the Probate Estates would receive approximately $2.8 million for the Troutman Settlement. Any further pursuit of the Troutman litigation would only benefit the Probate Estates' counsel. After payment of approximately an additional $2.8 million from the Troutman Settlement, the Probate Estates' Counsel will have recovered approximately $12.28 million in fees and costs, or a recovery by the Probate Estates of a mere half of the amounts paid to counsel on their behalf.

payment of any portion of the $200,000 requested by GJB. Total professional fees incurred are $847,424 expended over approximately 1500 hours. The average blended hourly rate charged by GJB attorneys was $462 per hour.[2] It strains credulity to argue that, despite the improbable and outstanding result obtained in the Troutman litigation, that GJB did not render legal services reasonably valued at least equal to $200.000.

## CONCLUSION

For the reasons stated, the Court should (i) overrule the Probate Estates' Objection, (ii) enter an order approving the Application and directing Troutman to pay $200,000 to the Trustee so that such amount may be paid to GJB, and (iii) granting for such other and further relief as is proper.

Dated:  April 14, 2021

Respectfully submitted,

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Former Special Litigation Counsel to the Trustee*
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Tel: (305) 349-2300
Fax: (305) 349-2310

By: /s/ *John H. Genovese*
John H. Genovese, Esq.
Florida Bar No. 280852
Email: jgenovese@gjb-law.com

---

[2] GJB's time records for the applicable period of December 16, 2016 to November 13, 2019, comprise 79 pages and hundreds of individual time entries. The Probate Estates have lodged various appeals in this Chapter 7 case, which remain pending. GJB's time entries are subject to both attorney-client and work-product privileges. Upon direction by the Court, GJB shall seek to file such time sheets under seal or submit redacted copies. *See Team System International, LLC v. Haozous*, 706 Fed. Appx. 463, 466 (10th Cir. 2017); *Sommer v. U.S.*, 2011 WL 4592788, *5-6 (S.D. Cal. 2011) (finding no waiver of the attorney-client privilege where plaintiff submitted redacted portions of billing statements that were privileged); *In re Lentek Intern., Inc.*, 2006 WL 2987001, at *3 (Bankr. M.D. Fla. September 12, 2006) ("[B]illing and time records which also reveal litigation strategy or the specific nature of the services provided, such as entries describing the particular areas of law researched by an attorney, do fall within the protection of the [attorney-client] privilege"); *Stanziale v. Vanguard Info-Solutions Corp.*, 2008 WL 1808318, at *1 (Bankr. D.N.J. April 21, 2008); *Nesse v. Pittman*, 202 F.R.D. 344, 356 (D.D.C. 2001) ("The billing entries of an attorney may well reflect what he has done on behalf of his client and directly or indirectly reveal his mental processes . . . The work product privilege protects intangible work product as well as what Fed. R. Civ. P. 26(b)(3) calls "documents and tangible things.").

Paul J. Battista, Esq.
Florida Bar No. 884162
Email: pbattista@gjb-law.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically furnished via CM/ECF upon all interested parties registered to receive electronic notification on this matter (which is incorporated herein by reference) on April  14, 2021.

By:/s/ John H. Genovese_____
John H. Genovese, Esq.